UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ECOPETROL S.A.,<br><br>                    Petitioner,<br><br>          v.<br><br>OFFSHORE EXPLORATION AND PRODUCTION, LLC,<br><br>                    Respondent. | _____Civ._____<br>ECF Case |

**PETITION TO CONFIRM ARBITRATION AWARDS**

Petitioner Ecopetrol S.A. ("Ecopetrol" or "Petitioner"), by and through its undersigned attorney, Mayer Brown LLP, petitions this Court to confirm an arbitration award pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "Convention"), and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.* ("FAA"), and respectfully alleges as follows:

**NATURE OF ACTION**

1.      Ecopetrol, together with Korea National Oil Corporation ("KNOC" and, jointly with Ecopetrol, "Purchaser") participated in a binding arbitration with respondent Offshore Exploration and Production, LLC ("Seller" or "Respondent" and, together with Purchaser, the "Parties") held in New York, New York ("Arbitration") before a tribunal of three arbitrators[1] (the "Tribunal") pursuant to a binding arbitration agreement contained in Section 10.7 of the

---

[1] The arbitrators, who all served in a neutral role, were Horacio A. Grigera Naón, the Director of the Center on International Commercial Arbitration at the American University Washington College of Law; Steven A. Hammond, a partner at Hughes Hubbard & Reed, LLP; and Robert B. Davidson, the Executive Director of JAMS Arbitration Practice. (Chesin Decl. Ex. C at 14.)

Parties' Stock Purchase Agreement (as amended, the "SPA"). (Declaration of Scott A. Chesin ("Chesin Decl.") Ex. D.)

2. Ecopetrol seeks an Order confirming the Final Award, dated December 10, 2015 ("Final Award"),[2] which incorporates the Partial Final Award, dated May 29, 2015 ("Partial Final Award"),[3] and the Correction and Interpretation of Partial Final Award, dated July 31, 2015 ("Correction and Interpretation of the Partial Final Award" and, together with the Partial Final Award and Final Award, the "Awards"), rendered in the Arbitration between Purchaser and Seller administered by the International Centre for Dispute Resolution ("ICDR"). True and correct copies of the Partial Final Award, the Correction and Interpretation of the Partial Final Award, and the Final Award are attached as Exhibit A, Exhibit B, and Exhibit C, respectively, to the accompanying Declaration of Scott A. Chesin, dated October 30, 2018. (Chesin Decl. Ex. A; Ex. B; Ex. C.)

3. Petitioner respectfully requests that, pursuant to Article IV of the Convention and 9 U.S.C. § 207,[4] the Court enter a judgment confirming the Awards. Petitioner further requests that the judgment specify Seller pay Purchaser $20,158,840.44 U.S. Dollars, comprised of $17,400,091.66 U.S. Dollars in principal and $2,758,748.78 U.S. Dollars as of October 29, 2018 ("Outstanding VAT"), and $4,290.43 U.S. Dollars daily thereafter in interest pursuant to

---

[2] The Tribunal issued a Final Award reaffirming the Partial Final Award and again ordering Seller to compensate Purchaser "for all losses" resulting from Seller's failure to reimburse Purchaser for the VAT taxes. (Chesin Decl. Ex. C at 11.)

[3] The Tribunal issued a Partial Final Award, awarding Purchaser "compensation for all losses occasioned by Seller's failure to reimburse Purchaser for the VAT taxes that Purchaser paid for tax years 2001 through 2007 . . . ." (Chesin Decl. Ex. A at 95.)

[4] Under 9 U.S.C. § 207, Petitioner may, "[w]ithin three years after an arbitral award" is made, "apply to any court having jurisdiction" for "an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. "The Court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award as specified" in the Convention. *Id*.

Seller's obligation under the Awards to, *inter alia*,[5] pay Purchaser "compensation for all losses occasioned by Seller's failure to reimburse Purchaser for the VAT taxes that Purchaser paid for tax years 2001 through 2007,"[6] interest on such amounts at the simple rate of nine percent (9%) per annum from the date of such payments until satisfaction of the Court's Order and Judgment, plus post-judgment interest at the statutory rate until the amount is paid.

4. While Seller has partially paid its VAT obligation, the Parties disagree on the precise amount due for the Outstanding VAT. Specifically, Seller has objected to Purchaser's calculation of the same, arguing that the calculation is flawed. Purchaser disagrees with Seller's assertion otherwise and asserts that its calculation of the Outstanding VAT corresponds with what the Tribunal ordered in the Awards. (*See* Chesin Decl. Ex. I at 3-4.)

5. In circumstances such as here, where the Parties, for example, disagree as to how the award should be implemented monetarily, courts have remanded the disputed issues to the Tribunal. Petitioner maintains that, as of October 29, 2018, Purchaser is entitled to $20,158,840.44 U.S. Dollars, comprised of $17,400,091.66 U.S. Dollars in principal and $2,758,748.78 U.S. Dollars in interest under the Awards. (Chesin Decl. Ex. L.) If the Court

---

[5] Purchaser prevailed on a number of non-VAT claims, some of which remain pending. (*See* Chesin Decl. Ex. C at 10-13.) To date, however, payment from Seller for those claims has not become due. Payment, for example, for the Pipeline Abandonment, EIS Environmental Claims, Health and Safety Claims, and Vacation Claims (collectively, the "Basket Claims") are not yet due because to date, "the aggregate amount of liability for all Losses, which are subject to the "Basket," [as] defined in SPA ¶ 8.5 has not exceeded the sum of $15 million." (*Id.* at 12, § D(1).) Similarly, with regard to the IMI Tax Claim for the year 2000 ("IMI Claim"), Seller was ordered to reimburse Purchaser "for any amounts that Purchaser may pay for such tax liability within 30 days of Purchaser's demand for indemnification in accordance with the provisions of SPA § 7.4(d)," as well as interest at the simple rate of nine percent (9%) per annum commencing on the date that Purchaser pays any such tax liability and continuing until satisfaction of the Award. (*Id.* at 11-12, § B(2).) To date, Purchaser has not yet been ordered to pay the Peruvian tax authorities for the IMI Claim and, as a result, has not sought reimbursement of the same from Seller. In the event that the Court confirms the Awards, to the extent that payment for the Basket Claims and/or the IMI Tax Claim (together, the "Outstanding Non-VAT Claims") become due, Petitioner hereby expressly reserves its right to exercise its rights under this Court's order and judgment.

[6] The Final Award awarded Purchaser "(1) . . . compensation for all losses occasioned by Seller's failure to reimburse Purchaser for the VAT taxes that Purchaser paid for tax years 2001 through 2007, including: (a) the amounts of such taxes paid; (b) interest on such amounts at the simple rate of nine percent (9%) per annum from the date of such payment until satisfaction of th[e] AWARD." (*See* Chesin Decl. Ex. C at 11, § A(1).)

determines that it cannot summarily affirm the Award and enter judgment in the amount requested by Ecopetrol, Ecopetrol respectfully requests that the Court remand the determination of the amount due to the Tribunal, with the instruction that the Tribunal issue a supplemental award that expressly provides for the exact amount due and owed to Purchaser to date under the Awards.

## PARTIES

6. Ecopetrol is the national oil company of Colombia. It is organized under the laws of Colombia and its principal offices are in Colombia.

7. Seller is a private investment holding company organized under the laws of Delaware. Its principal offices are in Houston, Texas.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. § 1332(a)(3) because this is an action between citizens of different States and in which citizens or subjects of a foreign state are parties. The amount in controversy exceeds $75,000, exclusive of interest and costs. The Court also has jurisdiction pursuant to the 9 U.S.C. §§ 201 and 203.

9. Venue is proper pursuant to 9 U.S.C. § 204.

10. This Court has the power to grant the relief requested pursuant to 9 U.S.C. § 207.

## FACTS

11. In December 2008, Purchaser and Seller entered into a Stock Purchase Agreement ("SPA") pursuant to which Purchaser acquired an oil and gas exploration and production business for $1.2 billion U.S. Dollars. (Chesin Decl. Ex. D.) One of the companies Purchaser acquired is currently known as Savia Peru S.A. ("Savia").

12. The SPA requires Seller to indemnify Purchaser for pre-acquisition tax liabilities. (Chesin Decl. Ex. D at § 7.4). Pursuant to SPA §§ 7.4(a) and (d), Seller must pay these tax

4

liabilities to the applicable governmental authorities before they are due. (*Id.*) Even if Seller is challenging the tax, it must pay the tax pending the final determination of liability. (*Id.*)

13. Following the close of the transaction, Seller repudiated its tax indemnification obligations by refusing to pay, *inter alia,* the VAT when due by Savia to the Peruvian tax authority, *Superintendencia Nacional de Aduanas y de Administración Tributaria* ("SUNAT"). (Chesin Decl. Ex. A at ¶ 38 n.9, ¶ 65; Ex. B at ¶¶ 5-7.) Purchaser requested that Seller comply with the SPA by paying the VAT. Seller, however, refused to comply and did not indemnify Purchaser for this expense. (Chesin Decl. Ex. A at ¶¶ at 61-69.) Instead, the burden of payment improperly fell on Purchaser, through Savia. (*Id.*)

14. Seller disputed its obligation to pay the VAT and initiated an arbitration administered by the ICDR, the international arm of the American Arbitration Association. (Chesin Decl. Ex. A. at ¶ 61.)

15. While these claims were pending before the Tribunal, Ecopetrol requested an order for specific performance compelling Seller to meet its obligations under SPA §§ 7.4(a) and (d), and to indemnify Purchaser for the VAT Savia had paid to SUNAT. Ecopetrol also asked the Tribunal to order Seller to pay any future tax liabilities that arise. (Chesin Decl. Ex. F at ¶ 3.)

16. On April 16, 2013, the Tribunal issued an Interim Award, finding in favor of Purchaser and ordering Seller to pay the VAT Savia paid to SUNAT. (Chesin Decl. Ex. E at 7; Ex. F at ¶ 2.)

17. Purportedly to satisfy the Interim Award, Seller unilaterally instructed an escrow agent to release the amount due from an escrow account established to secure Purchaser's indemnification claims. (Chesin Decl. Ex. F at ¶ 2.) The SPA, however, does not permit Seller to unilaterally authorize the release of escrow funds to indemnify Purchaser for the VAT. (*Id.* at

¶¶ 15-18.) Moreover, if Seller had been permitted to use escrow funds to reimburse Purchaser for the VAT, less than $50 million would have remained in escrow, leaving various other unresolved indemnification claims (totaling over $160 million U.S. Dollars at that time) substantially under secured. Purchaser therefore objected to the release of escrow funds to satisfy the Interim Award. (*Id.*)

18. On May 24, 2013, Seller brought suit in the United States District Court for the Southern District of New York. Seller argued that the Tribunal lacked jurisdiction to determine the escrow agent's authority to release funds in these circumstances and sought a declaration that the escrow agent must release the amount due from the escrow account. (Chesin Decl. Ex. F at ¶ 2.)

19. In an Opinion and Order filed December 2, 2013, this Court rejected Seller's jurisdictional argument. This Court held that the parties had delegated issues of arbitrability to the Tribunal. The Court found that the Tribunal should determine arbitrability in the first instance and, if the dispute was arbitrable, decide it on the merits. The Court stayed the action pending a decision on arbitrability by the Tribunal. (Chesin Decl. Ex. G.)

20. On December 3, 2013, the Tribunal issued an Interim Award Supplementing First Interim Award of April 2013 Requiring Claimant to Reimburse Respondents for VAT Taxes Pending Final Award on the Merits ("Supplemental Interim Award"). (Chesin Decl. Ex. F.) In so doing, the Tribunal assumed jurisdiction over the dispute concerning satisfaction of the Interim Award and reaching its merits, as well as reaffirmed its Interim Award and Seller's obligation to pay Purchaser for the VAT. (*Id.* at 9.) The Tribunal also declared that Seller's instructions to the escrow agent to pay the Interim Award were ineffective and did not constitute compliance with the Interim Award. (*Id.* at ¶¶ 15-18.)

21. On January 28, 2014, Purchaser petitioned this Court to confirm the Interim Award and Supplemental Interim Award. (Chesin Decl. Ex. J.)

22. On September 10, 2014, this Court confirmed the Interim Award and Supplemental Interim Award ("Interim Award Order"). (Chesin Decl. Ex. H.)

23. While Purchaser sought payment from Seller under the Interim Award Order, the Arbitration proceedings continued. In mid-2015, the Tribunal issued the first of a series of awards in the Arbitration. The Awards sought to resolve a disagreement between Purchaser and Seller on the VAT claims. The Tribunal noted that the Seller has "to date, not paid the amount described in the Interim Award . . . ." (Chesin Decl. Ex. A at ¶ 27.) Seller argued that it did not have to perform its obligations to indemnify under SPA § 7.4 because it was denied control of the tax contests. (Chesin Decl. Ex. A at ¶ 67.) The Tribunal, however, rejected this argument. The Tribunal noted that "Seller cannot on the one hand refuse to indemnify and then, on the other, demand control of the tax contests." (*Id*. at ¶ 69.) The Tribunal ultimately found that "Purchaser, under the circumstances, was fully justified in failing to cede control of the tax contests to Seller . . . and this Award will compensate Purchaser for all of its losses, including the amounts advanced for the payment of the assessments, interest on those amounts and the costs incurred in attempting to obtain Seller's compliance with the SPA . . . ." (*Id*. at ¶ 77.)

24. The Tribunal also explicitly awarded Purchaser "compensation for all losses occasioned by Seller's failure to reimburse Purchaser for the VAT taxes that Purchaser paid for tax years 2001 through 2007 . . . ." (Chesin Decl. Ex. A at 95; Ex. C at 11.) This included "(a) the amounts of such taxes paid; (b) interest on such amounts at the simple rate of nine percent (9%) per annum from the date of such payments until satisfaction of this AWARD;

(c) the amount of $8,240,221.40 for [attorneys' fees and costs associated with the litigation]." (*Id.*)

25. Despite being ordered in 2015 to pay for "all losses occasioned by Seller's failure to reimburse Purchaser for the VAT taxes that Purchaser paid for tax years 2001 through 2007," nearly three years later, Seller has only partially complied with its payment obligations for the amounts due and owing under the Awards. (Chesin Decl. Ex. A at 95; Ex. C at 11.) To date, Purchaser has received $90,743,465 U.S. Dollars in partial satisfaction of the VAT, in addition to amounts in satisfaction of certain non-VAT claims that have fallen due and attorneys' fees and costs. Seller, however, continues to be in default of the Awards in the total amount of: (a) $17,400,091.66 U.S. Dollars, the principal amount of outstanding VAT that Purchaser is due for VAT years 2001-2007, plus (b) interest on such amounts at the simple rate of nine percent (9%) per annum from the date of such payments until satisfaction of the Court's Order and Judgment. As of October 29, 2018, that amount totals $20,158,840.44 U.S. Dollars, comprised of $17,400,091.66 U.S. Dollars in principal and $2,758,748.78 U.S. Dollars in interest. After October 29, 2018, interest will continue to accrue at a daily rate of $4,290.43 U.S. Dollars.

26. The Parties disagree as to the Outstanding VAT amount entitled to Purchaser under the Awards and are at an impasse. (*See* Chesin Decl. Ex. K.)

27. Seller both refuses to pay the Outstanding VAT and consent to further withdrawals from the escrow account to satisfy its outstanding VAT obligations because it contests Purchaser's calculation. Specifically, Seller argues that the amount claimed: (i) is not confirmed as being due to Purchaser in the Awards; (ii) is calculated incorrectly by Purchaser; (iii) is based on VAT principal not awarded to Purchaser in the Awards; (iv) seeks interest to

8

which Purchaser is not entitled under the Awards and New York law; and (v) fails to properly account for reimbursements Purchaser received and which the Awards require that they credit in Seller's favor.

28. Purchaser has opposed Seller's position and has argued that contrary to Seller's assertion otherwise: (i) Purchaser is entitled to approximately $5.8 million U.S. Dollars due in principal for the 2007 VAT payments that Seller authorized Purchaser to pay and that, though not specifically named in the Award, are in fact due and owing because Purchaser was awarded "compensation for all losses occasioned by Seller's failure to reimburse Purchaser for the VAT amounts that Purchaser paid for tax years 2001 through 2007"; (ii) Seller's conditional offer to pay from escrow on or about June 30, 2015 and provide inferior security, and Purchaser's rejection of the same, is not a basis for the 9% interest rate awarded to Purchaser in the Arbitration to stop accruing, as Purchaser has the right under the SPA to elect its remedies at its sole discretion, including to not receive payment from the escrow; (iii) the date that Purchaser deposited the reimbursement from SUNAT is the appropriate date to apply when calculating the interest accrued on the reimbursements, not the dates during which Purchaser had received the reimbursement but Seller prohibited it from depositing the check; and (iv) Seller is not entitled to receive credit for reimbursements twice—Seller received credit for the full amount of the VAT 2004 and 2005 that SUNAT reimbursed to Savia, including those amounts that Savia did not receive from SUNAT in cash, but rather in the form of a credit towards other alleged income tax liabilities. (*See* Chesin Decl. Ex. I at 3-4.)

29. In circumstances such as this, where the Parties, for example, disagree as to the amount owed under the Awards, courts have remanded the disputed issues to the tribunal that issued the underlying award to clarify the meaning or effect of an award. Unless the Court

determines it can summarily enter judgment in the amount requested, Petitioner respectfully requests that the Court remand the determination of the amount due to the Tribunal and instruct it to issue a supplemental award that expressly provides for the exact amount due and owed to Purchaser to date under the Awards.

## **RELIEF**

WHEREFORE, Ecopetrol respectfully petitions this Court, pursuant to Article IV of the Convention and 9 U.S.C. § 207, to:

1. enter an order confirming and enforcing the Awards against Offshore Exploration and Production LLC;

2. enter judgment that Offshore Exploration and Production LLC is liable to Ecopetrol S.A. and Korea National Oil Corporation in the total amount of: (a) $17,400,091.66 U.S. Dollars, the amount of outstanding VAT that Purchaser is due to date for VAT years 2001-2007, plus (b) $2,758,748.78 U.S. Dollars in interest on such amounts as of October 29, 2018, as well as additional interest that continues to accrue until the date of payment at a daily rate of $4,290.43 U.S. Dollars;

3. enter judgment that, in accordance with that liability, Offshore Exploration and Production LLC is liable to Ecopetrol S.A., specifically, for 50 percent of the above amounts, which are: (a) $8,700,045.83 U.S. Dollars, plus (b) $1,379,374.39 U.S. Dollars in interest on such amounts as of October 29, 2018, as well as additional interest that continues to accrue until the date of payment at a daily rate of $2,145.22 U.S. Dollars;

4. post-judgment interest at the statutory rate; and

5. award Ecopetrol such further relief as the Court may deem just and proper.

If the Court deems that a remand is necessary, Ecopetrol respectfully petitions this Court to remand the determination of the Outstanding VAT amount to the Tribunal that rendered the Awards and instruct the Tribunal to issue a supplemental award that provides for the exact amount of VAT taxes due and owed to Purchaser to date.

\* \* \* \*

Dated:  October 30, 2018

        Respectfully submitted,

        /s/ *Scott A. Chesin*
        Scott A. Chesin
        Allison M. Stowell
        MAYER BROWN LLP
        1221 Avenue of the Americas
        New York, New York 10020-1001
        (212) 506-2500
        sachesin@mayerbrown.com
        astowell@mayerbrown.com

        Pablo C. Ferrante
        MAYER BROWN LLP
        700 Louisiana Street
        Houston, Texas 77002
        (713) 238-3000
        pferrante@mayerbrown.com

        *Attorneys for Petitioner Ecopetrol S.A.*