IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ECOPETROL S.A.,<br><br>     *Petitioner*,<br><br>   v.<br><br>OFFSHORE EXPLORATION AND PRODUCTION, LLC,<br><br>     *Respondent*. | Case No. 18 Civ. 10024 (PGG) |

**AMENDED PETITION AND MOTION TO CONFIRM IN PART
AND TO VACATE IN PART ARBITRAL AWARDS**

Petitioner Ecopetrol S.A. ("Ecopetrol" or "Petitioner"), by its attorneys, Mayer Brown LLP, for its amended petition and motion to confirm in part and to vacate in part international arbitration awards pursuant to decretal paragraph nine of the Stipulation and Order entered May 1, 2019 (ECF No. 18, the "2019 Remand Order") and pursuant to Sections 9, 10, and 207 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), respectfully alleges as follows:

**I.  NATURE OF ACTION**

  1.  This case was commenced on October 31, 2018, when Ecopetrol filed a petition to confirm the Final Award, dated December 10, 2015, which incorporates the Partial Final Award, dated May 29, 2015, and the Correction and Interpretation of Partial Final Award, dated July 31, 2015 (collectively, the "Awards"), rendered in the arbitration between (i) Ecopetrol and Korea National Oil Corporation ("KNOC") and (ii) Offshore Exploration and Production, LLC ("Offshore") administered by the International Centre for Dispute Resolution ("ICDR"). Pursuant to the 2019 Remand Order, this case was stayed and the

matter remanded to the original Tribunal to resolve the stipulated "Ambiguities" in the Awards ("Remand Arbitration"). (Declaration of Michael O. Ware ("Ware Decl.") Ex. G). The Tribunal issued two supplemental awards: 1) the Interim Supplemental Award (Ware Decl. Ex. A); and 2) the Final Supplemental Award (Ware Decl. Ex. B).

2. Petitioner seeks an Order vacating a single issue of the Final Supplemental Award encompassed in paragraphs 37, 38, 42 and 45(C) of the Final Supplemental Award issued by the ICDR on March 16, 2022. (Ware Decl. Ex. B). In all other respects, the Final Award, Interim Supplemental Award and Final Supplemental Award should be confirmed.

3. Paragraphs 37, 38, 42 and 45(C) of the Final Supplemental Award address a potential disgorgement of Value Added Tax ("VAT") by Savia Peru S.A. ("Savia") relating to tax years 2001 and 2004-2005 ("Disgorgement Contingency Claims"). In rendering its findings and declaration on the Disgorgement Contingency Claims, the Tribunal exceeded its powers by issuing a decision on an issue not presented to it and beyond the scope of its authority. Specifically, the Tribunal issued a ruling on an issue not specified in the 2019 Remand Order and not addressed in the parties' written submissions on the merits or argued at the merits hearing. Instead, the Tribunal issued its ruling on the basis of assertions made by Respondent Offshore about the contents and effect of a contract not in the record before the Tribunal in a post-hearing and post-Interim Supplemental Award submission not meant for that purpose. Such conduct establishes that the Final Supplemental Award's ruling on the Disgorgement Contingency Claims must be vacated under 9 U.S.C. §§ 10(a)(4) and 207.

## II.     THE PARTIES

4. Ecopetrol is the national oil company of Colombia. It is organized under the laws of Colombia. Its principal place of business is in Colombia.

5. Offshore is a limited liability company organized under the laws of Delaware with its principal place of business in Houston, Texas.

## III. JURISDICTION AND VENUE

6. This case falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, and this Court accordingly has jurisdiction under 9 U.S.C. § 203.

7. Venue is proper in this district and division pursuant to 9 U.S.C. § 204 because the relevant agreement (the 2008 SPA, defined below) designates New York, New York as the place of arbitration.

8. This Court has the power to grant the relief requested pursuant to 9 U.S.C. §§ 9, 10 and 207.

## IV. FACTUAL BACKGROUND

### A. First Arbitration: Offshore Is Ordered To Indemnify Ecopetrol

9. In December 2008, Ecopetrol and Offshore entered into a stock purchase agreement ("2008 SPA") pursuant to which Ecopetrol acquired an oil and gas exploration and production business for US$1.2 billion. (Ware Decl. Ex. C). One of the companies Ecopetrol acquired was Savia. Under the 2008 SPA, Offshore is required to indemnify Ecopetrol for pre-acquisition tax liabilities of Savia, including through payment of those liabilities to the applicable governmental authorities before they are due. (*Id*., at § 7.4).

10. Following the close of the transaction, however, Offshore repudiated its tax indemnification obligations by refusing to pay, *inter alia,* the VAT when due by Savia to

SUNAT,[1] despite Ecopetrol's repeated requests that Offshore comply with its obligations. (Ware Decl. Ex. D at ¶ 38 n.9, ¶ 65).  The burden of paying these taxes fell on Ecopetrol, who counterclaimed against Offshore after it initiated an arbitration administered by the International Centre for Dispute Resolution ("ICDR") alleging that it was not obligated to pay VAT.  (*Id.*, at ¶¶ 20, 61-69).  The Tribunal issued several awards culminating in a Final Award ordering, *inter alia*, Offshore to pay Ecopetrol "compensation for all losses occasioned by Seller's [Offshore] failure to reimburse Purchaser [Ecopetrol] for the VAT taxes that Purchaser paid for tax years 2001 through 2007 . . ."  (Ware Decl. Ex. E at 11).  Despite these awards, the parties continued to disagree as to the amount of VAT outstanding and due to Ecopetrol.

      **B.**     **The Remand Arbitration**

      11.    This case was commenced on October 31, 2018, when Ecopetrol filed in this Court its Petition to Confirm Arbitration Awards, seeking to confirm the awards issued in the prior arbitration.  (Ware Decl. Ex. F). Thereafter, Ecopetrol and Offshore entered into a stipulation, embodied in the 2019 Remand Order, remanding to the Tribunal certain "Ambiguities," defined as:

> a contingency [in the prior arbitration awards] and [that] are susceptible to more than one interpretation concerning whether any portion of the Disputed VAT Amount is due and, if so, the calculation and determination of the amount that is owed under the prior Awards of the Tribunal.

(Ware Decl. Ex. G).

      12.    The Tribunal, comprised of Robert Davidson (Chair), Steven Hammond, and Horacio Grigera Naon was reconstituted on January 30, 2020.  (Ware Decl. Ex. H).

---

[1] The Peruvian tax authority, *Superintendencia Nacional de Aduanas y de Administración Tributaria* ("SUNAT").

13. Over the course of 2020 and 2021, Ecopetrol and Offshore made their respective submissions regarding the Ambiguities. Throughout, Ecopetrol emphasized that the Tribunal had plainly decided that Offshore must compensate Ecopetrol for all losses associated with 2001 through 2007 VAT, including the 2001 and 2004-2005 VAT refunds that were subject to disgorgement at the time of the Tribunal's Final Award in the first phase of the arbitration. (Ware Decl. Exs. J, N). Ecopetrol further emphasized that the Tribunal's prior make-whole award requires Offshore to indemnify and hold Ecopetrol harmless from any and all 2001-2007 VAT liabilities in whatever amount, whenever paid. (*Id.*). Offshore did not challenge the relief Ecopetrol requested.

14. On January 19, 2021, while the arbitration was pending, Ecopetrol executed a share purchase agreement (the "2021 SPA") with non-party Z Mining Investments LLC ("Z Mining"). On January 21, 2021, Vinson & Elkins, Offshore's counsel at the time, requested a copy of the 2021 SPA (Ware Decl. Ex. L) and, on January 25, 2021, advised the arbitration tribunal in a separate proceeding that some of Ecopetrol's claims against the Escrow Amount and Offshore were now allegedly moot. (Ware Decl. Ex. M). On March 2, 2021, Ecopetrol provided Offshore a redacted copy of the 2021 SPA. (Ware Decl. Ex. O). The Tribunal in this arbitration was not supplied, by either party, with a copy of the 2021 SPA, nor was it exhibited in any of the parties' submissions on the Ambiguities. Offshore never disputed its liability for 2001 and 2004-2005 VAT subject to disgorgement nor the relief Ecopetrol sought in relation thereto on the basis of the 2021 SPA or otherwise.

15. On December 27, 2021, the Tribunal issued its Interim Supplemental Award, confirming that its prior Final Award was meant to be a make-whole remedy and inviting Ecopetrol to submit a recalculation of the amount owed by Offshore in light of that and other

rulings in the Interim Supplemental Award. (Ware Decl. Ex. A). On January 14, 2022, Ecopetrol filed its Submission of Recalculation of Amounts Due, requesting that the Tribunal include in its final award the same relief Ecopetrol had requested throughout and that Offshore had never challenged, namely "that Seller [Offshore] is liable to Ecopetrol S.A. . . for any and all amounts Savia paid or is required to pay SUNAT for 2001–2007 VAT, plus interest at the rate of 9% from the date of payment by Savia to the date of reimbursement by Seller." (Ware Decl. Ex. X at p. 2).

16. On January 21, 2022, Offshore responded to Ecopetrol's Submission of Recalculation of Amounts Due. (Ware Decl. Ex. Y). Offshore accepted Ecopetrol's recalculation of the amounts due in light of the Interim Supplemental Award. (*Id*., at p. 2). Offshore objected, however, to Ecopetrol's request for a declaration concerning Offshore's liability for 2001-2007 VAT, arguing for the first time that:

> However, Purchaser [Ecopetrol] no longer owns Savia and Purchaser would not suffer any loss if Savia were ordered to disgorge reimbursements issued by SUNAT. Based on Seller's [Offshore's] reading of the redacted SPA between Purchaser and Z Mining Investments, LLC, which was provided to Seller by Purchaser, Seller understands that Purchaser would suffer no damages in the event Savia was ordered to disgorge reimbursements funds because Z Mining Investments LLC has no recourse against Purchaser for such disgorgements. Accordingly, Seller requests that any declaration concerning Seller's liability with respect to VAT for 2001-2007, be limited to only those years specifically identified by Purchaser as subject to ongoing *amparo* litigation—VAT for 2001, 2004, and 2005—and based upon a finding that Purchaser is actually damaged by any payment or disgorgement ordered against Savia.

(*Id.*, at p. 2-3).

17. This was the last submission to the Tribunal by either party in the Remand Arbitration before the Final Supplemental Award. Further, it was Offshore's first and only submission to the Tribunal regarding the 2021 SPA, which was not presented to the Tribunal

6

by either party at any point prior to issuance of the Final Supplemental Award. On February 10, 2022, the Tribunal declared the hearing closed. (Ware Decl. Ex. AA).

### C. The Final Supplemental Award

18. The ICDR issued the Final Supplemental Award in the Remand Arbitration on March 16, 2022. (Ware Decl. Ex. B). Among other things, the Final Supplemental Award conditioned any payment that Offshore must make to Ecopetrol in respect of any disgorged 2001 and 2004-2005 VAT on (1) Savia is compelled to disgorge the refunds and (2) Ecopetrol is compelled by the 2021 SPA to reimburse Z Mining for any disgorged tax payments. (*Id*. at 45(C)). This ruling reflects Offshore's last minute, unevidenced assertions regarding the 2021 SPA. Not only is this ruling factually and legally incorrect (as it is apparently predicated on a misunderstanding of both the 2021 SPA and the claims at issue), the Tribunal was never empowered to issue any ruling on the Disgorgement Contingency Claims.

## V. PARAGRAPHS 37, 38, 42, AND 45(C) OF THE FINAL SUPPLEMENTAL AWARD MUST BE VACATED BECAUSE THE TRIBUNAL EXCEEDED ITS POWERS

19. Pursuant to 9 U.S.C. § 10(a)(4), an award may be vacated when the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." "Under Section 10(a)(4), the inquiry is guided by the question 'whether the arbitrator had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue. . . .'" *Subway Int'l, B.V. v. Subway Russia Franchising Co.*, LLC, No. 21-CV-7362 (JSR), 2021 WL 5830651, at *4 (S.D.N.Y. Dec. 8, 2021) (quoting *Jock v. Sterling Jewelers Inc.*, 942 F.3d 617, 622 (2d Cir. 2019)).

20. Here, as set out in more detail in Ecopetrol's Memorandum of Law, the Tribunal made a ruling in the Final Supplemental Award based on Offshore's representation of the

content of the 2021 SPA without ever receiving the 2021 SPA, reviewing its terms or inviting Ecopetrol to comment.  The effect of the 2021 SPA on the Disgorgement Contingency Claims was not briefed before the Tribunal.  In light of these facts, by issuing a ruling on the Disgorgement Contingency Claims, the Tribunal exceeded or imperfectly executed its powers or otherwise exceeded the scope of authority granted to it by the contractual provision providing for arbitration.  Accordingly, paragraphs 37, 38, 42, and 45(C) of the Final Supplemental Award must be vacated.

## VI.   THE REMAINDER OF THE FINAL SUPPLEMENTAL AWARD SHOULD BE CONFIRMED

21.   The Court must grant a petition to confirm an arbitration award unless the award is vacated in accordance with Section 10 of the FAA.  Petitioner Ecopetrol thus moves to confirm the Awards, the Interim Supplemental Award and the remainder of the Final Supplemental Award.

WHEREFORE, petitioner Ecopetrol S.A. respectfully requests the entry of judgment (a) vacating paragraphs 37, 38, 42, and 45(C) of the Final Supplemental Award on the basis that the Tribunal has exceeded its powers by issuing a decision on an issue not presented to it and beyond the scope of its authority; (b) confirming the Awards, the Interim Supplemental Award and the remainder of the Final Supplemental Award pursuant to 9 U.S.C. §§ 9 and

207; and (c) granting Ecopetrol such other, further and relief as to the Court appears just and proper.

Dated: New York, New York
       June 14, 2022

                              MAYER BROWN LLP

                              By: _____
                                    Michael O. Ware
                                  *mware@mayerbrown.com*

                              1221 Avenue of the Americas
                              New York, N.Y. 10020
                              (212) 506-2500

                              *Attorneys for petitioner Ecopetrol S.A.*

*Of Counsel:*

Michael P. Lennon, Jr.*
Pablo C. Ferrante**
James B. Danford, Jr.*
Anna V. Durham*
MAYER BROWN LLP
700 Louisiana St., Suite 3400
Houston, Tex. 77002
(713) 238-3000

  *Pro hac vice application forthcoming
  **Admitted pro hac vice