**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ECOPETROL S.A., | |
| *Petitioner*, | |
| v. | Case No. 18 Civ. 10024 (PGG) |
| OFFSHORE EXPLORATION AND PRODUCTION, LLC, | |
| *Respondent*. | |

# RESPONSE IN OPPOSITION TO PETITIONER'S MOTION TO VACATE IN PART ARBITRAL AWARDS

Leo G. Kailas
REITLER KAILAS &
ROSENBLATT LLP
885 Third Ave., 20th Fl.
New York, N.Y. 10022
(212) 209-3050
*lkailas@reitlerlaw.com*

Matthew S.C. Hansel
HANSZEN LAPORTE, LLP
14201 Memorial Dr.
Houston, Texas 77079
(t):713-522-9444
(f):713-524-2580
mhansel@hanszenlaporte.com
*Motion for Pro Hac Vice Pending*

ATTORNEYS FOR RESPONDENT
OFFSHORE EXPLORATION AND PRODUCTION, LLC

# TABLE OF CONTENTS

Table of Authorities ........................................................................................ 3

I.  SUMMARY ARGUMENT .................................................................... 4

II.  DISCLAIMER CONCERNING NOMENCLATURE, EXHIBITS, AND
PROCEDURAL HISTORY ................................................................... 5

III.  PRELIMINARY STATEMENT ........................................................... 6

IV.  FACTUAL BACKGROUND ................................................................ 8

    A.  Offshore's Indemnification Obligation and the Underlying Arbitration ........ 8

    B.  The Remand Arbitration .............................................................. 9

    C.  Offshore's Challenge to the Relief Sought .................................... 13

    D.  The Supplemental Awards .......................................................... 14

V.  ARGUMENT AND AUTHORITIES .................................................... 16

    A.  The Tribunal had contractually delegated authority to determine the scope of
Offshore's indemnification obligated under the 2008 SPA ........................ 17

    B.  The Parties, and particularly Petitioner, asked the Tribunal to rule on the
Disgorgement Contingency Claims and submitted the issue to the Tribunal 19

    C.  The Supplemental Awards determine Offshore's indemnification obligations
under the 2008 SPA, not the 2021 SPA, and simply provide that Offshore is
required to indemnify Petitioner only if Petitioner actually suffers and
indemnifiable loss, which makes perfect sense ............................................. 20

    D.  Petitioner's cited authorities are inapposite under the facts in this case ........ 22

VI.  CONCLUSION AND PRAYER ........................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Banco de Seguros del Estado v. Mut. Mar. Off., Inc.*
   344 F.3d 255, 262, 263 [2d Cir 2003] .......................................................... 17, 21, 22

*Jock v Sterling Jewelers Inc.*
   646 F3d 113, 123-124 [2d Cir 2011] .................................................................. 19, 20

*Jock v Sterling Jewelers Inc.*
   942 F3d 617, 622 [2d Cir 2019] ............................................................................. 18

*Matter of Arbitration Between Melun Undus., Inc. and Strange*
   898 F Supp 990, 992-993 [SDNY 1990] .......................................................... 22, 23

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.,*
   858 F.2d 825, 832 (2d Cir. 1988) ........................................................................... 17

*ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*
   564 F.3d 81, 85-86 (2nd Cir. 2009) ......................................................... 6, 17, 18, 21

*Stolt-Nielsen S.A. v AnimalFeeds Intl. Corp.*
   559 US 662 [2010]) ................................................................................................ 16

*Subway Into., B.V. v. Subway Russia Franchising Co., LLC*
   21-CV-7362 (JSR), 2021 WL 5830651, at *4-5 [SDNY Dec. 8, 2021] ................................ 22

*Union Appointed Trustees of Tapers Indus. Ins. And Annuity Funds v. Empl.-Appointed Trustees of Taper Indus. Ins. and Annuity Funds*
   714 F Supp 104, 105-6 [SDNY 1989] .................................................................... 23

*United Paperworkers Int'l Union AFL-CIO v. Misco, Inc.*
   484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) ......................................... 6, 17, 18, 21

*Westerbeke Corp. v. Dauhatsu Motor Co., Ltd.,*
   304 F. 3d 200, 220 [2d Cir.2002] ........................................................................... 17

## STATUTES

9. U.S.C. § 10(a)(4) ........................................................................................ 6, 16, 21

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ECOPETROL S.A.,

> *Petitioner*,

v.

OFFSHORE EXPLORATION AND
PRODUCTION, LLC,

> *Respondent.*

Case No. 18 Civ. 10024 (PGG)

**RESPONSE IN OPPOSITION TO PETITIONER'S MOTION TO
VACATE IN PART ARBITRAL AWARDS**

Respondent Offshore Exploration and Production, LLC ("Offshore" or "Respondent"), by

its attorneys, Reitler Kailas & Rosenblatt LLP and Hanszen Laporte, LLP (motion to appear pro

hac vice pending), files this response opposing petitioners Ecopetrol S.A.'s ("Ecopetrol" or

"Petitioner") motion to vacate in part arbitral awards, and in support hereof respectfully show the

following:

**I.      SUMMARY ARGUMENT**

The Court should deny Petitioner's motion to vacate in part the Supplemental Awards at

issue in this case and confirm the Supplemental Awards entered by the Tribunal because: (i) the

Tribunal had contractually delegated authority to determine the scope of Offshore's

indemnification obligation under the 2008 SPA; (ii) the issue of the Disgorgement Contingency

Claims—Offshore's future indemnification obligations under the 2008 SPA for tax years 2001,

2004, and 2005—was specifically submitted to the Tribunal *by Petitioner*; and (iii) the

Supplemental Awards determine Offshore's indemnification obligations under the 2008 SPA, not

the 2021 SPA, and simply provide that Offshore is required to indemnify Petitioner only if Petitioner actually suffers an indemnifiable loss, which makes perfect sense.

Incredibly, Petitioner now, after arguing the Tribunal must rule on the Disgorgement Contingency Claims in order to clarify the meaning of the Tribunal's earlier Awards with respect to Offshore's indemnification obligations under the 2008 SPA, seeks to relitigate this issue and asks this Court to vacate in part the Tribunal's Supplemental Awards in the Remand Arbitration on the pretextual basis that the Tribunal was ruling on the 2021 SPA not the 2008 SPA. Petitioner's flawed argument cannot satisfy Petitioner's heavy burden to show the Tribunal acted outside the scope of its authority under the 2008 SPA and its motion to vacate in part should be denied.

## II.    DISCLAIMER CONCERNING NOMENCLATURE, EXHIBITS, AND PROCEDURAL HISTORY

The matter currently before this Court arrives having traveled a long and winding road, full of a various characters, events, and procedural landmarks, some of which are relevant to the Court's understanding of the case and its ability to rule on the core question presented, namely, "did the Tribunal exceed its authority?" In the interest of efficiency and out of an appreciation for the Court's time, Respondent adopts as its own Petitioner's nomenclature, definitions, and exhibits. Moreover, though Respondent takes issue with certain of Petitioner's characterizations of certain of the parties' positions and procedural events related to this matter, generally Petitioner's dates and basic descriptions of procedural events are correct and are likewise adopted by Respondent. To the extent Respondent believes it is necessary to clarify any inaccuracies in Petitioner's recitation or characterization of the procedural or factual background in this case, Respondent will provide limited background in this Response.

## III.     PRELIMINARY STATEMENT

This case is not an opportunity for Petitioner to relitigate an issue that it agreed to take to the Tribunal and that the Tribunal was empowered to consider under the 2008 SPA. A court's review of an arbitral award under 9 U.S.C. 10(a)(4) is narrow and limited to consideration of whether the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority." *See ReliaStar Life Ins. Co. of N.Y. v EMC Nat. Life Co.*, 564 F3d 81, 85-86 [2d Cir 2009] (quoting *United Paperworkers Int'l Union AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 38 (1987)). This case, the underlying arbitration, and the Remand Arbitration all relate to and arise from Offshore's indemnity obligations to Petitioner under the 2008 SPA; and, specifically, Offshore's indemnification obligations under the 2008 SPA for tax years 2001-2007.

The language in the Supplemental Awards to which Petitioner objects provides only that Offshore does not have to make indemnification payments to Petitioner if some other third-party, and not Petitioner, suffers a loss. It is anyone's guess why Petitioner would ask the Tribunal to award Petitioner damages from Offshore in the event Savia, a company Petitioner no longer owns, is required at some future point to pay additional taxes (especially now that Petitioner has made it clear to this Court that the 2021 SPA was never presented to the Tribunal). Notwithstanding, that is precisely what Petitioner did in the Remand Arbitration when it asked the Tribunal to enter an award:

> Declaring that Seller is liable to Ecopetrol S.A. and Korea National Oil Corporation *for any and all amounts Savia* paid *or is required* to pay SUNAT for 2001–2007 VAT, plus interest at the rate of 9% from the date of payment by Savia to the date of reimbursement by Seller…[1]

---

[1] Ware Decl. Ex. N at ¶ 97.d. (emphasis added).

Offshore, rightly, alerted the Tribunal to the fact that Petitioner recently sold Savia to a third party, while the Remand Arbitration was pending, and that as a result Petitioner would not suffer any loss if *Savia* is ordered to pay more taxes in the future.[2] Offshore, rightly, asked the Tribunal to limit Offshore's *indemnification* liability under the 2008 SPA only to instances where Petitioner *actually suffers a loss*.[3] The Tribunal acknowledged Offshore's request in its Final Supplemental Award stating, "…[Offshore] asks that its liability for the possible disgorgement by Petitioner of VAT taxes back to SUNAT be limited…and only if Purchaser is actually damaged by any payment that Savia is compelled to make to SUNAT."[4]

The Tribunal, rightly, included language in its Supplemental Awards to clarify that under the 2008 SPA Offshore must make *indemnification* payments to Petitioner and reimburse Petitioner for the Disgorgement Contingency Claims in the event Petitioner has to pay the taxes related to those claims and suffers a loss. To most readers of the English language, this would seem to be a victory for Petitioner—the Tribunal rules that Offshore has to indemnify Purchaser for all Petitioner's losses for 2001-2007 VAT, including future losses resulting from disgorgement. Surprisingly, and tellingly, Petitioner takes great umbrage at the Tribunal's willingness to consider whether a loss has occurred before ordering one party to indemnify another for the loss.

Whether Offshore was obligated to make additional indemnification payments under the 2008 SPA for *all* VAT taxes for 2001-2007 that were paid *or that might be paid*, including the Disgorgement Contingency Claims relating to VAT for 2001, 2004, and 2005, was specifically before the Tribunal in the Remand Arbitration and argued extensively by Petitioner. The Tribunal

---

[2] Ware Decl. Ex. Y at 2.
[3] Ware Decl. Ex. Y at 2.
[4] Ware Decl. Ex. B at ¶ 38.

did not need to see or construe the 2021 SPA, which Petitioner admits the Tribunal did not, or any other agreement to determine Offshore's obligations under the 2008 SPA.

The Tribunal's Supplemental Awards relate solely to the parties' obligations under the 2008 SPA and the Tribunal was well within its contractually delegated authority under the 2008 SPA and the Remand Order to rule on whether and in what circumstances Offshore is required to make indemnification payments to Petitioner for the Disgorgement Contingency Claims. Moreover, the parties, and particularly Petitioner, clearly agreed to submit this issue to the Tribunal insomuch as Petitioner sought a ruling from the Tribunal on this issue. Accordingly, the Tribunal did not exceed its power or its authority and Petitioner's motion to vacate in part the arbitral award should be denied.

## IV.    FACTUAL BACKGROUND

### A.  Offshore's Indemnification Obligation and the Underlying Arbitration

Pursuant to Section 7.4 of the 2008 SPA, Offshore agreed to indemnify Petitioner for qualifying *losses* resulting from unpaid taxes attributable to the Pre Determination Date Tax Period (essentially January 1, 2001 through June 30, 2008).[5] Specifically, SPA§ 7.4(a) provides:

> (a) Seller shall indemnify and defend the Purchaser Indemnitees and hold the Purchaser Indemnitees harmless from and against (1) all liability for taxes of any PT Group Member ... attributable to (A) any Pre-Determination Date Tax Period, ... (5) any Loss that a Purchaser Indemnitee shall suffer, sustain, or become subject to as a result of the breach of Seller's representations and warranties contained in Section 3.6 (Taxes and Assessments) or Seller's covenants and agreements herein, or in any certificate delivered with respect to any of the foregoing, that relate to Taxes.[6]

In the underlying arbitration the Tribunal determined that under Section 7.4 of the 2008 SPA Offshore was obligated to pay "compensation for all *losses* occasioned by [Offshore's] *failure*

---

[5] Ware Decl. Ex. C1 § 7.4(a).
[6] Ware Decl. Ex. C1 § 7.4(a).

*to reimburse* [Petitioner] for the VAT taxes the *[Petitioner] paid* for tax years 2001 through 2007…." [7]

The Awards from the underlying arbitration made specific findings as to the specific amounts of discrete losses Petitioner incurred as a result of Offshore's failure to timely indemnify Petitioner for specific VAT liabilities pursuant to Section 7.4 of the SPA.[8] The Awards also included the accrual date of each individual loss for purposes of calculating prejudgment interest awarded to Petitioner by the Tribunal.[9] After the Awards were entered, Petitioner made a demand on Offshore for the payment of additional VAT for 2007 totaling approximately $5.8 million that was not identified in the Awards. Petitioner never made an express claim or presented evidence supporting these additional VAT damages during the underlying arbitration. Because the Awards did not specifically provide a finding that the additional $5.8 million of VAT was a loss or a finding concerning a date on which the loss occurred,[10] Offshore refused to pay the additional VAT arguing it was not a "loss" included in or covered by the Award. The Remand Arbitration followed.

**B. The Remand Arbitration**

The Tribunal conducted the Remand Arbitration under the same contractual authority that empowered the Tribunal to conduct the underlying arbitration, the 2008 SPA. The Tribunal states in the Final Supplemental Award:

> As this was a remand proceeding the original arbitration agreement that governed the prior arbitration governed this remand proceeding as well. That agreement was found in Section 10.7(a) of the [2008] SPA. It provided:
>
> > (a) any dispute, controversy of Action arising out of or relating to this Agreement, or the breach thereof (other than a dispute, controversy or Action arising out of or in relation to or in connection with the calculation of the

---

[7] Ware Decl. Ex. E at 11 (emphasis added).
[8] Ware Decl. Ex. D at ¶ 65.
[9] Ware Decl. Ex. D at ¶ 65.
[10] Ware Decl. Ex. D at ¶ 65.

Adjusted Cash Purchase Price, which shall be resolved in accordance with Section 6.4), shall be determined by arbitration administered by the American Arbitration Association in accordance with its International Arbitration Rules. The place of arbitration shall be New York, New York. The number of arbitrators shall be three (3).[11]

During the Remand Arbitration the Tribunal was tasked with deciding, among other things, "whether the Awards require [Offshore] to make additional payments in respect of VAT taxes…" and "clarifying the Awards as to (i) whether any portion of the Disputed VAT Amount is due, (ii) if additional amounts are due, the exact amount due and owing; and (iii) the allocation of cost and expenses in accordance with the Arbitration Agreement…."[12] Although the Ambiguities were articulated as discrete issues, the overarching issue to be resolved by the Tribunal during the Remand Arbitration was whether the Award in the underlying arbitration was a "make-whole" remedy intended to compensate Petitioner for "all losses" related to 2001-2007 VAT, or a discrete remedy intended to compensate Petitioner only for those specific losses identified by Petitioner in the underlying arbitration and enumerated in the Awards.

Offshore notes that Petitioner's "elaborated" issues on remand described in Petitioner's Memorandum of Law [Doc. 23] and quoted from its memorial are *not* the issues articulated in the Remand Order, but are Petitioner's own spin on the issues, which evolved during the course of the Remand Arbitration.[13] Offshore also notes the parties specifically stipulated in the Remand Order that the parties were not "limiting the arguments regarding the Ambiguities that may be raised on remand…."[14]

---

[11]  Ware Decl. Ex. B at ¶14 (citing Ware Decl. Ex. C1 §10.7(a); Ware Decl. Ex. D at ¶ 12).
[12] Ware Decl. Ex. B at 2-3.
[13] *Compare* Ware Decl. Ex. G ¶¶ 1-7, *with* Petitioner's Memorandum of Law [Doc. 23 at 16-17].
[14] Ware Decl. Ex. G ¶¶ 2-3.

Petitioner clearly understood and agreed the scope of the Tribunal's Authority during the Remand Arbitration included consideration of any additional amounts that Offshore currently did or might have to pay for 2001-2007 VAT. Indeed, Petitioner argued throughout the Remand Arbitration that the Awards found Offshore liable to Petitioner for "all losses" related to Offshore's indemnification obligation for VAT liabilities for 2001-2007 under Section 7.4 of the 2008 SPA.[15] Although the only additional VAT liability specifically identified by an amount certain in the Remand Arbitration was the approximately $5.8 million of 2007 VAT, Petitioner's argument during the Remand Arbitration did not relate only to $5.8 million of 2007 VAT.[16] Petitioner argued extensively that the Tribunal's Awards "ordered [Offshore] to make [Petitioner] whole, awarding [Petitioner] 'compensation for *all losses* occasioned by [Offshore's] failure to reimburse [Petitioner] for the VAT taxes that Purchaser paid for tax years 2001 through 2007....' "[17]

Consistent with Petitioner's understanding of the scope of the Tribunal's authority during the Remand Arbitration, Petitioner specifically requested an award from the Tribunal extending beyond the additional $5.8 million of 2007 VAT, and:

> Declaring that Seller is liable to Ecopetrol S.A. and Korea National Oil Corporation *for any and all amounts Savia paid or is required* to pay SUNAT for 2001–2007 VAT, plus interest at the rate of 9% from the date of payment by Savia to the date of reimbursement by Seller…[18]

Purchaser argued further to the Tribunal in support of this requested award that:

> 3.     …**Purchaser is mindful of the President's observation that the Tribunal wants to resolve all issues to obviate any need for further remands**. One such issue was identified in Purchaser's Reply — that is, a potential disagreement could arise concerning SUNAT's refunds of VAT payments for tax years 2001 and 2004-2005.

---

[15] Ware Decl. Ex. N at 1- 4, 7, 9, 11, 13, 15, 17-20, 24-25.
[16] Ware Decl. Ex. N at 4, 7.
[17] Ware Decl. Ex. N at 4 (quoting, Ware Decl. Ex. D at 95 (emphasis added)).
[18] Ware Decl. Ex. N at 97.d. (emphasis added); *See also* Ware Decl. Ex. X at 4.

4.      In the first phase of this arbitration, Purchaser presented the amounts paid by Savia and not reimbursed by Seller in respect of those tax years. The Tribunal granted relief for those amounts in the Interim Award and sustained Purchaser's claim for indemnity for 2001 and 2004-2005 VAT in the Partial Final Award and the Final Award. While issuance of the Partial Final Award was pending, SUNAT refunded all amounts paid, and the Tribunal ordered Purchaser to credit Seller for those refunds, which it has.

5.      Nevertheless, because SUNAT has challenged the order requiring refunds, Savia may be ordered to disgorge the 2001 and 2004-2005 VAT refunds if SUNAT were to prevail in that litigation. While the risk of disgorgement may not be substantial, SUNAT could prevail after this remand is concluded and collect new VAT amounts from Savia subject to interest and penalties.

6.      **Purchaser's position is that a make-whole award is just that — Seller must indemnify and hold Purchaser harmless from any and all 2001-2007 VAT liabilities in whatever amount, whenever paid.** In contrast, Seller's arguments in this remand indicate that Seller's position, it seems, will be that these later-collected VAT amounts would not be covered by the Awards because those precise amounts were not presented to this Tribunal in the first phase of this arbitration and expressly referenced in the Awards.

7.      Seller's position is utterly illogical given the nature of an indemnity obligation and the Tribunal's Awards. It is also contrary to the efficiency and finality goals of the arbitration that the Parties bargained for in the arbitration agreement.      **That potential future disgorgement payments might not be identical to amounts presented by Purchaser and expressly referenced in the Awards does not absolve Seller of its absolute and unconditional obligation to indemnify Purchaser for all 2001–2007 VAT liabilities**. **And the Tribunal undeniably upheld Seller's obligation in the Awards' requirement that Seller pay Purchaser "compensation for all losses occasioned by Seller's failure to reimburse Purchaser for the VAT taxes that Purchaser paid for tax years 2001 through 2007."**

8.      **The Tribunal should confirm that its make-whole award covers all 2001-2007 VAT liabilities in whatever amount on whatever date paid**. **Purchaser submits that once the issue is resolved, that will conclude all 2001-2007 VAT issues between the Parties, including the 2001 and 2004–2005 VAT amounts referenced above and in Purchaser's Reply**, if Savia is ever ordered to disgorge those amounts.  **In other words, if the Tribunal's Awards are clarified as Purchaser proposes, no further VAT amounts should come out of the woodwork.** If not, additional VAT amounts could become subject to dispute.[19]

---

[19] Ware Decl. Ex. U. at ¶ 7 (emphasis added) (internal citations omitted)

### C. Offshore's Challenge to the Relief Sought

Petitioner is correct that Offshore never challenged the relief sought in the Remand Arbitration on the basis of the 2021 SPA.[20] However, in suggesting that Offshore did, or could have, or needed to make such a challenge in the Remand Arbitration, Petitioner sets up and attacks a straw man. Petitioner's argument that the Tribunal based its decision on the 2021 SPA is nothing but unsupported speculation.

Offshore challenged the relief Petitioner sought with respect to the Disgorgement Contingency Claims on the basis that the 2008 SPA obligates Offshore to make indemnification payments to Petitioner if *Petitioner* suffers indemnifiable *losses*, and Offshore made its challenge only to the extent the relief sought would provide an award of damages to Petitioner without requiring that Petitioner suffer any loss. Specifically, Offshore stated:

> …Seller requests that any declaration concerning Seller's liability with respect to VAT for 2001-2007, be limited to only those years specifically identified by Purchaser as subject to ongoing *amparo* litigation—VAT for 2001, 2004, and 2005—and based upon a finding that Purchaser is actually damaged by any payment or disgorgement ordered against Savia.[21]

Offshore was not arguing, as Petitioner wants this Court to believe, that the 2021 SPA limited or eliminated Offshore's indemnification obligation under the 2008 SPA. In its Response to Submission of Recalculation Offshore clearly acknowledges its obligation to indemnify Petitioner if Petitioner is damaged as a result of the Disgorgement Contingency Claims.[22] In the underlying arbitration the Tribunal already determined that under Section 7.4(a) of the 2008 SPA Offshore was obligated to pay "compensation for all *losses* occasioned by [Offshore's] *failure to reimburse* [Petitioner] for the VAT taxes the *[Petitioner] paid* for tax years 2001 through 2007…."

---

[20] Petitioner's Memorandum of Law [Doc. 23 at 11-14].
[21] Ware Decl. Ex. Y at 2.
[22] Ware Decl. Ex. Y at 2.

[23] Offshore simply wanted to ensure the Tribunal did not enter an award in conflict with the Awards that would obligate Offshore to pay windfall damages to Petitioner without Petitioner having suffered an indemnifiable loss.  In short Offshore only referenced the 2021 SPA because to the extent the 2021 SPA does or could eliminate Petitioner's own liability for the Disgorgement Contingency Claims, there would be no loss to Petitioner that would have obligated Offshore to reimburse Petitioner pursuant to Offshore's obligations under the 2008 SPA.

Though Offshore is hesitant to wade into any discussion concerning the "Second Arbitration," which involved different claims, and which was not before the Tribunal and is not before this Court, it worth clarifying a few points raised by Petitioner. First, Offshore's objection to the "Non-tax Claims" was perfectly consistent with its basis for opposing the relief Petitioner sought from the Tribunal concerning the Disgorgement Contingency Claims, namely, Petitioner was no longer the party with liability exposure related to those claims and could not suffer any losses that might trigger Offshore's indemnification obligation under the 2008 SPA. Second, and without delving too deeply into a fairly complex set of facts, with respect to any tax claims at issue there were no analogous future "Contingency Claims" in the "Second Arbitration." Petitioner had already suffered losses related to the tax claims in the "Second Arbitration" and the possibility that Savia might have additional liability for unpaid claims after Petitioner already sold Savia was not present.

### D.  The Supplemental Awards

Ultimately, the Tribunal provided relief in the Supplemental Awards that is based on Offshore's indemnification obligations under the 2008 SPA and that is consistent with the Tribunal's earlier rulings in the underlying arbitration Awards concerning Offshore's

---

[23] Ware Decl. Ex. E at 11 (emphasis added).

indemnification obligations under the 2008 SPA.[24] The Interim Supplement Award includes a lengthy analysis that references the Tribunal's analysis and determinations concerning Offshore's indemnification obligations under Section 7.4(a) of the 2008 SPA.[25] In the Interim Supplemental Award the Tribunal provides its justification for awarding Petitioner the additional $5.8 million for 2007 VAT, in part, as follows:

> The entire purpose of the Awards **was to effect total reimbursement pursuant to Offshore's obligation undertaken in Section 7.4(a) of the [2008] SPA** quoted above. **Thus, the Awards were, in fact, intended to include an obligation for [Offshore] to reimburse amounts that might subsequently arise**, such as the penalty amounts paid by Savia in August and September of 2013.[26]

The Tribunal's Final Supplemental Award expressly references and incorporates the Tribunal's analysis and findings presented in the Interim Supplemental Award.[27] In so doing, the Tribunal makes clear that its awards and declarations in the Finals Supplemental Award are based on its construction of the Section 7.4(a) of the 2008 SPA and its determination as to the scope of Offshore's indemnification obligations under Section 7.4(a) of the 2008 SPA. In the Final Supplement Award, the Tribunal declared, in relevant part:

> C. In addition, in the event that the Peruvian tax contests relating to tax years 2001, 2004 and 2005 result in the disgorgement back to SUNAT of VAT taxes previously refunded by SUNAT to Savia. Seller shall, in addition to the payments referenced in paragraphs A and B above, reimburse Purchaser for the VAT taxes disgorged <u>provided</u> that Savia is compelled to disgorge such refunds for any or all of those tax years to SUNAT, and <u>provided further</u>, that Purchaser is compelled by its sales contract to reimburse the buyer of the business for any such payments. No interest shall accrue on any payment that may be required to be made in accordance with this paragraph C.[28]

---

[24] Ware Decl. Ex. B at ¶¶ 32, 45; Ware Decl. Ex. A at ¶¶ 28-66.
[25] Ware Decl. Ex. A at ¶¶ 28-66.
[26] Ware Decl. Ex. A at ¶ 49 (emphasis added).
[27] Ware Decl. Ex. B at ¶ 32.
[28] Ware Decl. Ex. B at ¶¶ 32, 45.C.; Ware Decl. Ex. A at ¶¶ 43-50

The Tribunal's rulings in the Supplemental Awards are clearly related to and predicated upon the Tribunal's contractually delegated authority to resolve disputes under the 2008 SPA. It also is clear from the 2008 SPA, the Awards, and the Supplemental Awards, that Offshore's indemnification obligations with respect to VAT for 2001-2007, including the Disgorgement Contingency Claims, are to be determined under Section 7.4(a) of the 2008 SPA. The Tribunal does not need to see, or analyze, or hear argument concerning the terms of the 2021 SPA to decide whether Offshore owes and indemnification obligation under Section 7.4(a) of the 2008 SPA. The Tribunal only needs to know whether Petitioner has or will suffer a loss that must be reimbursed by Offshore under Section 7.4(a) of the 2008 SPA. No loss, no reimbursement. That is all the Tribunal said and it was totally within its power and authority to say.

## V. ARGUMENT AND AUTHORITIES

The Court must deny Petitioner's motion to vacate in part the arbitral awards because the Tribunal's Supplemental Awards construe the 2008 SPA to determine the parties' rights and obligations under the 2008 SPA, and particularly relevant here, to determine Offshore's indemnification obligations under Section 7.4(a) of the 2008 SPA.

When considering a motion to vacate an arbitral award under 9 U.S.C. § 10(a)(4) of the Federal Arbitration Act ("FAA") and the question of whether "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made" the Court must show extreme deference to the arbitrators. 9 U.S.C. § 10(a)(4); *see also Jock v Sterling Jewelers Inc.*, 942 F3d 617, 622 [2d Cir 2019] (citing *Stolt-Nielsen S.A. v AnimalFeeds Intl. Corp.*, 559 US 662 [2010]). A court's review of an arbitral award under 9 U.S.C. 10(a)(4) is limited to consideration of whether the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority." *See*

*ReliaStar Life Ins. Co. of N.Y. v EMC Nat. Life Co.*, 564 F3d 81, 85-86 [2d Cir 2009] (quoting *United Paperworkers Int'l Union AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 38 [1987]).

Court's "have consistently accorded the narrowest of readings to the FAA's authorization to vacate awards pursuant to § 10(a)(4). *Banco de Seguros del Estado v Mut. Off., Inc.*, 344 F3d 255, 262 [2d Cir 2003] (citing *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,* 304 F.3d 200, 220 [2d Cir.2002] (internal quotations omitted). "Where an arbitration clause is broad…arbitrators have the discretion to order remedies they determine appropriate, so long as they do not exceed the power granted to them by the contract itself." *Banco de Seguros del Estado v Mut. Mar. Off., Inc.*, 344 F3d 255, 262 [2d Cir 2003] (citing *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825, 832 (2d Cir.1988) (stating that if arbitrators have jurisdiction over a matter, "any subsequent construction of the contract and of the parties' rights and obligations under it" is for the arbitrators to decide (citation omitted))).

If an arbitrator's award is arguably rooted in the agreement to arbitrate "the scope of the court's review of the award itself is limited" and courts "do not consider whether the arbitrators correctly decided [the] issue." *ReliaStar Life Ins. Co. of N.Y. v EMC Nat. Life Co.*, 564 F3d 81, 85-86 [2d Cir 2009] (citing *Banco de Seguros del Estado v. Mut. Marine Office, Inc.,* 344 F.3d at 262 (internal quotation marks omitted)). "In other words, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court's conviction that the arbitrator has "committed serious error" in resolving the disputed issue "does not suffice to overturn his decision." *ReliaStar Life Ins. Co. of N.Y. v EMC Nat. Life Co.*, 564 F3d 81, 85-86 [2d Cir 2009] (quoting *United Paperworkers Int'l Union AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 38, [1987]).

A.     **The Tribunal had contractually delegated authority to determine the scope of Offshore's indemnification obligation under the 2008 SPA.**

The Tribunal had contractually delegated authority to settle disputes related to the 2008 SPA because the 2008 SPA, which is the parties' "Arbitration Agreement" expressly grant that authority to the Tribunal.[29] Section 10.7(a) of the 2008 SPA provides:

> (a) any dispute, controversy of Action arising out of or relating to this Agreement, or the breach thereof (other than a dispute, controversy or Action arising out of or in relation to or in connection with the calculation of the Adjusted Cash Purchase Price, which shall be resolved in accordance with Section 6.4), shall be determined by arbitration administered by the American Arbitration Association in accordance with its International Arbitration Rules. The place of arbitration shall be New York, New York. The number of arbitrators shall be three (3).[30]

Under Section 10.7(a) of the 2008 SPA the Tribunal had contractual authority to determine the scope of Offshore's indemnification obligations under the 2008 SPA and award relief based on the Tribunal's construction of Offshore's indemnification obligations.[31] The parties recognized the Tribunal was empowered settle disputes arising from and/or related to Offshore's indemnification obligations under the 2008 SPA when it submitted such disputes to the Tribunal in the underlying arbitration and again in the Remand Arbitration.[32]

Accordingly, the Tribunal's ruling in the Supplemental Awards is entitled to the Court's extreme deference. *Jock v Sterling Jewelers Inc.*, 942 F3d 617, 622 [2d Cir 2019]. The question before the Court is not whether the Tribunal made the correct ruling, or even whether the Tribunal committee serious error. *ReliaStar Life Ins. Co. of N.Y. v EMC Nat. Life Co.*, 564 F3d 81, 85-86 [2d Cir 2009]. Rather, the question before the Court is whether the Tribunal's Supplemental Awards is only whether the Tribunal "is even arguably construing or applying the [2008 SPA] and acting within the scope of his authority," *Id.* (citing *United Paperworkers Int'l Union AFL–CIO v.*

---

[29] Ware Decl. Ex. A at ¶14 (citing Ware Decl. Ex. C1 §10.7(a); Ware Decl. Ex. D at ¶ 12).
[30] Ware Decl. Ex. D §10.7(a).
[31] Ware Decl. Ex. A at ¶14 (citing Ware Decl. Ex. C1 §10.7(a); Ware Decl. Ex. D at ¶ 12).
[32] Ware Decl. Ex. G. at 1.

*Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 [1987]). The Tribunal's analysis in the Supplemental Awards leaves no doubt that the Tribunal's ruling in the Supplement Awards concerning Offshore's indemnification obligations related to the Disgorgement Contingency Claims is based on the Tribunal's construction and application of the 2008 SPA.[33] After all, the 2008 SPA, not the 2021 SPA, is the agreement that creates Offshore's indemnification obligation.[34]

B. **The Parties, and particularly Petitioner, asked the Tribunal to rule on the Disgorgement Contingency Claims and submitted the issue to the Tribunal.**

In addition to the express contractual authority delegated to the Tribunal under the 2008 SPA to determine the scope of and settle disputes related to Offshore's indemnification obligation under Section 7.4(a), the Tribunal was further empowered to rule on Offshore's indemnification obligations under Section 7.4(a) with respect to the Disgorgement Contingency Claims because the parties submitted the issue to the Tribunal during the Remand Arbitration. *See Jock v Sterling Jewelers Inc.*, 646 F3d 113, 123 [2d Cir 2011] (holding that where parties submit an issue to an arbitrator, the arbitrator is empowered to rule on the issue).

In *Jock* the Second Circuit considered whether an arbitrator acted within her power in permitting a class arbitration, where the underlying arbitration agreement was silent on the issue of class arbitration. *Id.* In upholding the arbitral award the Second Circuit noted:

> The threshold issues for the district court to consider in this case when deciding whether it was appropriate to vacate the award pursuant to section 10(a)(4) was, first, whether the parties had submitted to the arbitrator the question of whether their arbitration agreement permitted class arbitration.

---

[33] Ware Decl. Ex. B at ¶¶ 32, 45; Ware Decl. Ex. A at ¶¶ 28-66
[34] Ware Decl. Ex. C1 § 7.4(a).

*Id.* at 123. The Second Circuit further noted that because the parties submitted the question to the arbitrator in their briefs "there is no escaping the fact that the parties submitted that question to the arbitrator for a decision." *Id.* at 124 [2d Cir 2011].

In the Remand Arbitration, similarly to *Jock*, both parties, and particularly Petitioner, submitted the issue of the Disgorgement Contingency Claims to the Tribunal. Petitioner argued extensively in its briefing that the Tribunal's Awards "ordered [Offshore] to make [Petitioner] whole, awarding [Petitioner] 'compensation for *all losses* occasioned by [Offshore's] failure to reimburse [Petitioner] for the VAT taxes that Purchaser paid for tax years 2001 through 2007….' "[35] Moreover, when asked by the Tribunal whether the Tribunal need to consider additional amounts for 2001 through 2007 VAT that may be owed by Offshore under Section 7.4(a) of the 2008 SPA, both parties asked the Tribunal to make a declaration concerning Offshore's indemnification obligations with respect to the Disgorgement Contingency Claims.[36]

Accordingly, the parties submitted the issue of Offshore's indemnification obligations with respect to the Disgorgement Contingency Claims to the Tribunal and even if the Tribunal was not already contractually empowered to rule on the Offshore's liability for the Disgorgement Contingency Claims under the 2008 SPA—the Tribunal unequivocally was so empowered—the Tribunal became empowered to rule when the Parties asked it to. *See Jock*, 646 F3d 113, 123-24.

C.    **The Supplemental Awards determine Offshore's indemnification obligations under the 2008 SPA, not the 2021 SPA, and simply provide that Offshore is required to indemnify Petitioner only if Petitioner actually suffers an indemnifiable loss, which makes perfect sense.**

---

[35] Ware Decl. Ex. N at 1- 4, 7, 9, 11, 13, 15, 17-20, 24-25 (quoting, Ware Decl. Ex. D at 95 (emphasis added)).
[36] Ware Decl. Ex. U. at ¶ 7; Ware Decl. Ex. X at 4; Ware Decl. Ex. Y at 2.

The Supplemental Awards, by their plain language, offer the Tribunal's construction of and ruling upon the 2008 SPA and Offshore's indemnification obligation under Section 7.4(a).[37] Recognizing that the Tribunal based its ruling on Offshore's indemnification obligation under Section 7.4(a) of the 2008 SPA, the Court may "not consider whether the [Tribunal] correctly decided [the] issue." *ReliaStar Life Ins. Co. of N.Y. v EMC Nat. Life Co.*, 564 F3d 81, 85-86 [2d Cir 2009] (citing *Banco de Seguros del Estado v. Mut. Marine Office, Inc.,* 344 F.3d at 262 (internal quotation marks omitted)).

It does not matter if the Court believes the Tribunal got it wrong when the Tribunal decided that Section 7.4(a) required Petitioner to suffer a loss before Offshore is obligated to pay Petitioner damages.[38] It also does not matter if the Court believes the Tribunal should not have considered the scenario where Savia must pay taxes at a future date that Petitioner no longer has an obligation to pay because of the 2021 SPA.[39] For the Court's review of an arbitral award under 9 U.S.C. 10(a)(4) all that matters is whether the Tribunal "is even arguably construing or applying the [2008 SPA] …." *Id.* at 85-86 (quoting *United Paperworkers Int'l Union AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 38 [1987]).

Based on the Supplemental Awards it is evident that the Tribunal was construing and applying the 2008 SPA in its ruling on Disgorgement Contingency Claims.[40] Based on the parties' briefing to the Tribunal it is clear that the parties submitted the issue of the Disgorgement Contingency Claims to the Tribunal.[41] Accordingly, the Tribunal was acting within the scope of its authority and the Court must deny Petitioner's motion to vacate in part the Supplemental

---

[37] Ware Decl. Ex. B at ¶¶ 32, 45; Ware Decl. Ex. A at ¶¶ 28-66
[38] Ware Decl. Ex. B at ¶ 45.C.
[39] Ware Decl. Ex. B at ¶¶ 37, 38, 42.
[40] Ware Decl. Ex. B ¶¶ 32, 45; Ware Decl. Ex. A at ¶¶ 28-66
[41] Ware Decl. Ex. U; Ware Decl. Ex. N; Ware Decl. Ex. Y.

Awards and confirm the Supplemental Awards in their entirety. *See, e.g., Banco de Seguros del Estado v Mut. Mar. Off.*, Inc., 344 F3d 255, 263 [2d Cir 2003].

### D.     Petitioner's cited authorities are inapposite under the facts in this case.

Petitioner relies on a number of cases to support its argument that the Tribunal exceeded its authority when it made a ruling in the Supplemental awards concerning Offshore's indemnification obligations under Section 7.4(a) of the 2008 SPA with respect to the Disgorgement Contingency Claims. However, none of the cases cited by Petitioner are analogous to the situation in the Remand Arbitration. Here is why:

The court in *Subway Intl., B.V. v Subway Russia Franchising Co., LLC* found that an arbitrator exceeded his authority by issuing an award on a claim that was neither presented by the parties nor addressed in the underlying opinion.[42] 21-CV-7362 (JSR), 2021 WL 5830651, at *4-5 [SDNY Dec. 8, 2021]. Unlike in *Subway Intl.* in the Remand Arbitration the Tribunal *was* presented with a claim concerning Offshore's indemnification obligations with respect to the Disgorgement Contingency Claims, by *Petitioner*.[43] *Id.* Moreover, the Tribunal expressly determined in the Remand Arbitration, as Petitioner argued it should,[44] that "[t]he entire purpose of the Awards was to effect total reimbursement pursuant to Offshore's obligation undertaken in Section 7.4(a) of the [2008] SPA…" for 2001-2007 VAT liability.[45] Accordingly, *Subway Intl.* is not instructive in this case.

Similarly, the court in *Matter of Arbitration Between Melun Indus., Inc. and Strange* determined the arbitrator exceed his authority by considering issues that were not contractually

---

[42] Petitioner's Memorandum of Law [Doc. 23 at 18].
[43] *Compare Subway Intl., B.V., with* Ware Decl. Ex. N at 1- 4, 7, 9, 11, 13, 15, 17-20, 24-25, Ware Decl. Ex. U. at ¶ 7, Ware Decl. Ex. X at 4, and Ware Decl. Ex. Y at 2.
[44] Ware Decl. Ex. N at 1- 4, 7, 9, 11, 13, 15, 17-20, 24-25
[45] Ware Decl. Ex.  B at  ¶¶ 32, 45.C.; Ware Decl. Ex. A at ¶¶ 43-50.

delegated to the arbitrator by the parties' arbitration agreement.[46] 898 F Supp 990, 992-993 [SDNY 1990]. However, in this case, the 2008 SPA expressly empowers the Tribunal to resolve conflicts and disputes related to Offshore's indemnification obligations under 7.4(a) of the SPA.[47] Said another way, the Petitioner and Offshore's arbitration agreement specifically provides that the Tribunal is empowered to resolve disputes related to Offshore's indemnification obligations under Section 7.4(a) of the 2008 SPA, which necessarily includes Offshore's obligations with respect to the Disgorgement Contingency Claims.[48] The ruling in *Melun* does not apply to this case.

Petitioner also relies on the ruling in *Union Appointed Trustees of Tapers Indus. Ins. and Annuity Funds v Empl.-Appointed Trustees of Tapers Indus. Ins. and Annuity Funds*, where the court determined arbitrator "did not even arguably construe or apply the [arbitration agreement]." 714 F Supp 104, 105-6 [SDNY 1989], *affd sub nom. Union Appointed v Empl.-Appointed*, 898 F2d 137 [2d Cir 1990]. Unlike the arbitrator in *Tapers*, the Tribunal's Supplemental Awards are entirely premised on the Tribunal's construction and application of Section 7.4(a) of the 2008 SPA.[49] *Compare Tapers*, 714 F Supp at 105-6, *with* Ware Decl. Exhibit A at ¶¶ 28-66 and Ware Decl. Exhibit B at ¶ 32. The plain language of the Supplemental Awards defeats any argument that the Tribunal did not even arguably construe or apply the [2008 SPA]."[50]

## VI. CONCLUSION AND PRAYER

The Tribunal was acting within its contractually delegated authority when it ruled on Offshore's indemnification obligations under Section 7.4(a) with respect to the Disgorgement Contingency Claims because the 2008 SPA expressly empowers the Tribunal to resolve disputes

---

[46] Petitioner's Memorandum of Law [Doc. 23 at 19-20].
[47] Ware Decl. Ex. A at ¶14 (citing Ware Decl. Ex. C1 §10.7(a); Ware Decl. Ex. D at ¶ 12).
[48] Ware Decl. Ex. A at ¶14 (citing Ware Decl. Ex. C1 §10.7(a); Ware Decl. Ex. D at ¶ 12).
[49] Ware Decl. Ex. B at ¶¶ 32, 45; Ware Decl. Ex. A at ¶¶ 28-66.
[50] Ware Decl. Ex. B at ¶¶ 32, 45; Ware Decl. Ex. A at ¶¶ 28-66

related to Section 7.4(a) of the 2008 SPA. Additionally, the parties further empowered the Tribunal to rule on Offshore's indemnification obligations under Section 7.4(a) with respect to the Disgorgement Contingency Claims because the parties presented that issue to the Tribunal in the Remand Arbitration. Because the Tribunal was acting to construe and apply the 2008 SPA in the Remand Arbitration, the Tribunal had authority to issue the rulings in the Supplemental Awards, including its ruling in paragraph 45.C. of the Final Supplemental Award. The Court must defer to the Tribunal's determinations as to the parties' rights and obligations under the 2008 SPA and confirm the Supplemental Awards in their entirety.

Accordingly, Offshore respectfully prays the Court to deny Petitioner's motion to vacate in part the arbitral awards, confirm the Supplemental Awards in their entirety, and for all such further relief at law, or in equity, as to which Offshore is entitled.

Dated: New York, New York
August 26, 2022

REITLER KAILAS & ROSENBLATT LLP

By: _____
Leo G. Kailas
*lkailas@reitlerlaw.com*
885 Third Ave., 20th Fl.
New York, N.Y. 10022
(212) 209-3050

-and-

HANSZEN LAPORTE, LLP

By: ___/s/ Matthew Hansel_____
Matthew S.C. Hansel
Hanszen Laporte, LLP
14201 Memorial Dr.
Houston, Texas 77079
(t):713-522-9444
(f):713-524-2580
mhansel@hanszenlaporte.com
*Motion for Pro Hac Vice Pending*

*Attorneys for respondent Offshore
Exploration and Production, LLC*