UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ECOPETROL S.A.,

                              Petitioner,

                -against-

OFFSHORE EXPLORATION AND
PRODUCTION, LLC,

                              Respondent.

---

Case No. 1:18-cv-10024 (JLR)

**<u>OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

In 2018, a decade after consummating a billion-dollar transaction, Ecopetrol S.A. ("Ecopetrol") filed a petition to confirm three interrelated arbitration awards against Offshore Exploration and Production, LLC ("Offshore") issued by a three-member tribunal of the International Centre for Dispute Resolution (the "Tribunal").  ECF Nos. 1 (the "Petition" or "Pet."), 1-2 (the "Partial Final Award" or "PFA"), 1-3 (the "Correction and Interpretation of the Partial Final Award" or "C&I"), 1-4 (the "Final Award").  Six months later, by the parties' stipulation, several "[a]mbiguities and any related issue[s] that would aid in the clarification of the [a]mbiguities [we]re remanded for determination by the Tribunal."  ECF No. 18 (the "Stipulation" or "Stip.") ¶ 5.

On remand, the Tribunal issued two supplemental awards.  ECF Nos. 22-1 (the "Interim Supplemental Award" or "ISA"), 22-2 (the "Final Supplemental Award" or "FSA").  Ecopetrol then returned to court with an amended petition and motion to confirm the Interim Supplemental Award and to confirm in part and vacate in part the Final Supplemental Award.  ECF Nos. 21 (the "Amended Petition" or "Am. Pet."), 23 ("Br."), 40 ("Reply").  Offshore opposes the Amended Petition, instead requesting that the Court confirm in full the Interim Supplemental Award and the Final Supplemental Award.  ECF No. 30 ("Opp.").

1

For the reasons set forth below, the Court grants Ecopetrol's motion to confirm the Interim Supplemental Award and denies Ecopetrol's motion to vacate in part the Final Supplemental Award.  Accordingly, the Court confirms both awards in full.

## BACKGROUND

**I.     The Transaction and the Initial Arbitration**

Ecopetrol is the national oil company of Colombia.  Am. Pet. ¶ 4.  It is organized under the laws of Colombia, and its principal place of business is in Colombia.  *Id.*  Offshore is a Delaware limited-liability company with its principal place of business in Texas.  *Id.* ¶ 5.

On December 29, 2008, Offshore and Ecopetrol executed a stock-purchase agreement.  ECF No. 22-3 (the "2008 SPA"); *see also* ECF No. 22-4 (amendment to the 2008 SPA dated February 5, 2009).[1]  Under the 2008 SPA, Offshore sold 100 percent of the shares of Offshore International Group, Inc. ("OIG"), a holding company focused on oil and gas exploration and production, to Ecopetrol for $1.2 billion.  2008 SPA §§ 1.1, 2.1, 2.5(b); Am. Pet. ¶ 9; PFA ¶ 6.  One of the companies that Ecopetrol acquired through this transaction was Petro-Tech Peruana S.A., now known as Savia Peru S.A. ("Savia").  Am. Pet. ¶¶ 3, 9; PFA ¶ 9.  Savia is an oil and gas exploration and production company operating in Peru.  PFA ¶ 9.

In the 2008 SPA, Offshore agreed to indemnify Ecopetrol for OIG's pre-acquisition tax liabilities.  2008 SPA § 7.4.  The 2008 SPA also included a New York choice-of-law provision, *see id.* § 10.6, and a dispute-resolution provision stating that, with limited exceptions not relevant here, "[a]ny dispute, controversy or Action arising out of or relating to

---

[1] For completeness, the Court notes that there were two purchasers under the 2008 SPA: Ecopetrol and Korea National Oil Corporation ("KNOC").  Although KNOC "was also a party" to the arbitration, it "has not joined this confirmation proceeding."  Stip. at 1 n.1; *accord* Br. at 13 n.9 ("KNOC is not party to this case.").  Because KNOC's immediate relevance to the case at bar is negligible, the Court focuses on Ecopetrol.

the [2008 SPA], or the breach thereof . . . shall be determined by arbitration administered by the American Arbitration Association in accordance with its International Arbitration Rules," *id.* § 10.7(a).

On November 22, 2011, Offshore commenced arbitration proceedings against Ecopetrol, seeking to resolve several disputed issues involving Offshore's obligation to indemnify Ecopetrol for OIG's pre-transaction liabilities (tax and otherwise).  PFA ¶¶ 14, 17. Following several skirmishes between the parties in this District and before the Tribunal, the Tribunal held nine days of hearings in New York City in February and March 2014, and the parties completed post-hearing briefing during May and June 2014.  *Id.* ¶¶ 18-35.  The Tribunal issued the Partial Final Award on May 29, 2015.  *See generally id.*  On the parties' applications and after further briefing, on July 31, 2015, the Tribunal issued the Correction and Interpretation of the Partial Final Award, which incorporated by reference the Partial Final Award.  C&I ¶¶ 1, 3.  On December 10, 2015, the Tribunal issued the Final Award, which incorporated by reference both the Partial Final Award and the Correction and Interpretation of the Partial Final Award.  Final Award ¶ 3.  As relevant here, the Final Award awarded Ecopetrol "compensation for all losses occasioned by [Offshore's] failure to reimburse [Ecopetrol] for the [value-added tax ('VAT')] that [Ecopetrol] paid for tax years 2001 through 2007."  *Id.* ¶ 31(A)(1).

## II.    The Petition and the Stipulation

Ecopetrol filed the Petition on October 30, 2018, seeking confirmation of the Partial Final Award, the Correction and Interpretation of the Partial Final Award, and the Final Award under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958,

21 U.S.T. 2517, 330 U.N.T.S. 3 (the "New York Convention").  Pet. ¶ 3.[2]  In the Petition,

Ecopetrol reported that "while [Offshore] ha[d] partially paid its VAT obligation, the parties

disagree[d] on the precise amount due for the outstanding VAT."  *Id.* ¶ 4 (further

capitalization omitted).  Ecopetrol requested summary affirmance of the three awards and

entry of judgment in the amount of about $20 million.  *Id.* ¶ 5.  In the alternative, Ecopetrol

"request[ed] that the Court remand the determination of the amount due to the Tribunal, with

the instruction that the Tribunal issue a supplemental award that expressly provides for the

exact amount due and owed to [Ecopetrol] to date under the Awards."  *Id.*

Less than a month later, the Second Circuit issued a decision concerning the doctrine

of *functus officio*.  "The *functus officio* doctrine dictates that, once arbitrators have fully

exercised their authority to adjudicate the issues submitted to them, their authority over those

questions is ended, and the arbitrators have no further authority, absent agreement by the

parties, to redetermine those issues."  *Gen. Re Life Corp. v. Lincoln Nat'l Life Ins. Co.*, 909

F.3d 544, 548 (2d Cir. 2018) (citation omitted; emphasis added).  The Second Circuit

"join[ed] the Third, Fifth, Sixth, Seventh, and Ninth Circuits in recognizing an exception to

*functus officio* where an arbitral award fails to address a contingency that later arises or when

the award is susceptible to more than one interpretation."  *Id.* (quotation marks and citation

---

[2] "The New York Convention is a multilateral treaty that addresses international arbitration." *GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 438 (2020).  "In 1970, the United States acceded to the New York Convention, and Congress enacted implementing legislation in Chapter 2 of the FAA."  *Id.* at 439.  If a party seeks to confirm an award under the New York Convention, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.  If an arbitral award has been rendered in the United States, the "available grounds for vacatur [under the New York Convention] include all the express grounds for vacating an award under the FAA."  *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016).  Here, the parties frame their arguments entirely around the FAA and do not discuss the New York Convention.  *See generally* Br.; Opp.; Reply.  The Court follows their lead in this regard.

4

omitted; emphasis added).  The Second Circuit also affirmed "the well-settled rule in this Circuit that when asked to confirm an ambiguous award, the district court should instead remand to the arbitrators for clarification." *Id.* at 549.

On January 25, 2019, Ecopetrol and Offshore submitted the Stipulation, which Judge Gardephe entered on April 30, 2019.  ECF No. 14; Stip. at 6.  In a "whereas" clause in the Stipulation, the parties explained that they "disagree as to whether the Awards require [Offshore] to make additional payments in respect of VAT taxes and, if additional payments are due, the amount of principal and interest still owed (the 'Disputed VAT Amount')."  Stip. at 1-2.  In another "whereas" clause, the parties agreed that "the Awards fail to address a contingency and are susceptible to more than one interpretation concerning whether any portion of the Disputed VAT Amount is due and, if so, the calculation and determination of the amount that is owed under the prior Awards of the Tribunal (the 'Ambiguities')."  *Id.* at 2. The parties also agreed, in yet another "whereas" clause, that "remand of the determination of the Ambiguities to the Tribunal and an instruction to issue a supplemental award that resolves the Ambiguities is appropriate under *General Re Life Corp.* and the Arbitration Agreement." *Id.*  In turn, the Stipulation provided that:

> IT IS HEREBY STIPULATED AND AGREED by the undersigned attorneys for the Parties, and So Ordered by the Court, as follows:
>
> 1.  The Awards contain Ambiguities, which Ambiguities have led to an impasse between the Parties over whether any Disputed VAT Amount remains outstanding and, if so, the amount owed under the prior Awards of the Tribunal.
>
> 2.  Specifically, and without limiting the arguments regarding the Ambiguities that may be raised on remand, [Offshore] argues that there [are] no additional VAT payments due to [Ecopetrol] after taking into account the funds already released from escrow because: (i) [Ecopetrol] seeks amounts not confirmed as being due in the Awards; (ii) [Ecopetrol] seeks

approximately $5.8 million for an alleged 2007 VAT payment although that amount was not set forth in the Awards and creates an aggregate principal amount higher than the amount in the Awards; (iii) [Ecopetrol] seeks interest after the dates on which [Offshore] offered to satisfy the amounts due and owing, contrary to the Awards and New York law that holds that post-award interest ceases to accrue after an unconditional offer of payment is made and refused; and (iv) [Ecopetrol's] calculations include incorrect dates of receipt and both understated amounts and failure to account entirely for various reimbursements it received from the Peruvian tax authorities that offset [Offshore's] liability as per the Awards.

3.  Meanwhile, and without limiting the arguments regarding the Ambiguities that may be raised on remand, [Ecopetrol] argues that, contrary to [Offshore's] position, the Awards require [Offshore] to pay an additional $20,158,840.44 U.S. Dollars because: (i) approximately $5.8 million U.S. Dollars due in principal for 2007 VAT payments is owed; (ii) a conditional offer to pay by [Offshore] did not stop interest from accruing; (iii) the date of deposit, and not the date of receipt, of certain checks is the appropriate date to apply in calculating the Disputed VAT Amount, because [Offshore] prohibited deposit of those checks; and (iv) [Offshore's] calculation claims credit for certain reimbursements twice.

4.  Pursuant to *General Re Life Corp. v. Lincoln National Life Insurance Co.*, 909 F.3d 544 (2d Cir. 2018), remand to the Tribunal for clarification of the Awards and resolution of the Ambiguities is proper, and the Parties are in agreement that the Ambiguities should be so remanded.

5.  The Ambiguities and any related issue that would aid in the clarification of the Ambiguities are remanded for determination by the Tribunal.

6.  The Tribunal shall conduct the additional proceedings in accordance with the Rules of the International Centre for Dispute Resolution ('ICDR') and shall issue a supplemental award clarifying the Awards as to: (i) whether any portion of the Disputed VAT Amount is due, (ii) if additional amounts are due, the exact amount due and owing; and (iii) the allocation of costs and expenses in accordance with the Arbitration Agreement.

*Id.* at 2-4 (footnote omitted).

### III.   Proceedings on Remand

The Tribunal was reconstituted to address the remanded issues on January 30, 2020.

Am. Pet. ¶ 12.  On January 19, 2021, while proceedings on remand were ongoing, Ecopetrol

executed a share-purchase agreement (the "2021 SPA") with Z Mining Investments LLC ("Z

Mining").  *Id.* ¶ 14.  On March 2, 2021, at the request of Offshore's counsel, Ecopetrol

provided Offshore with a redacted copy of the 2021 SPA.  *Id.*  Neither Ecopetrol nor Offshore

supplied the Tribunal with a copy of the 2021 SPA, redacted or otherwise, during the

proceedings on remand.  *Id.*  Likewise, no copy of the 2021 SPA has been submitted to the

Court, although Ecopetrol cites (and even quotes) part of the 2021 SPA in its brief.  *See* Br.

at 11 & nn.6-7.[3]  Based on the documents in the record and the parties' representations to the

Court, however, it appears that under the 2021 SPA, Ecopetrol sold its stake in OIG (and,

thus, Savia) to Z Mining.  *See, e.g.*, Am. Pet. ¶ 14 ("On January 19, 2021, . . . Ecopetrol

executed [the 2021 SPA] with non-party Z Mining"; "On January 21, 2021, Vinson & Elkins,

Offshore's counsel at the time, requested a copy of the 2021 SPA"); ECF No. 22-13 at 2

(email from counsel for Offshore on January 21, 2021, noting Ecopetrol's recent sale of OIG

and requesting "all contracts relevant to the sale"); ECF No. 22-16 at 5 (email from counsel

for Ecopetrol noting "the consequences of Ecopetrol and KNOC selling their shares in OIG").

Following briefing, the Tribunal held a hearing by videoconference on July 7 and 8,

2021.  ISA ¶ 26.  Afterwards, the Tribunal solicited and received additional briefing on two

questions: (1) "Other than the $5,816,457.98 in 2007 VAT penalties before the Tribunal,

---

[3]  Ecopetrol asserts that "the 2021 SPA, even as redacted, is a commercially sensitive
document that normally would not be made public.  Nevertheless, for the sake of full
transparency, Ecopetrol is prepared to submit to the Court *in camera* the redacted 2021 SPA."
*Id.* at 11 n.5.  Because the Court's decision here does not rely on the actual terms of the 2021
SPA (indeed, because the Court has never received any version of the 2021 SPA), the Court
need not decide whether the redacted 2021 SPA would warrant *in camera* treatment.

do[es] [Ecopetrol] envision any additional amounts [that] will be sought in relation to 2007 VAT that have not been presented to the Tribunal?"; and (2) "What effect, i[f] any, should footnote two to Offshore's April 10, 2014 Decision Tree [addressing non-tax liabilities] have on the Tribunal's analysis of the issues before the Tribunal on remand?" *Id.* ¶ 27 n.2 (original alterations adopted).

The Tribunal issued the Interim Supplemental Award on December 27, 2021. *See generally id.* The Tribunal described itself in the Interim Supplemental Award as "having been duly empaneled in accordance with [the] Stipulation . . . , which directed the original Tribunal in this matter to clarify certain Ambiguities (as defined in the Stipulation) in its prior Awards." *Id.* ¶ 1. The Tribunal added that "[a]s this was a remand proceeding[,] the original arbitration agreement that governed the prior arbitration governed this remand proceeding as well." *Id.* ¶ 14 (citing 2008 SPA § 10.7(a)).

The Tribunal stated that "[t]he Ambiguities that the arbitrators were charged with clarifying were presented in the three issues that were the subject of oral argument by counsel on the first day of the hearings." *Id.* ¶ 28. These issues were: (1) "Whether [Offshore] was obligated to indemnify [Ecopetrol] for an additional $5.8 million in 2007 VAT," *id.* at 10 (emphasis omitted); (2) "Whether interest should accrue through [Ecopetrol's] receipt of [Offshore's] indemnification payments," *id.* at 19 (emphasis omitted); and (3) "How should certain reimbursements and interest amounts received from SUNAT be credited," *id.* at 21 (emphasis omitted); *see id.* ¶ 29 (the Superintendencia Nacional de Aduanas y de Administración Tribularia ("SUNAT") is "the relevant Peruvian tax authority"). The Tribunal resolved the first two issues in the affirmative. *See id.* ¶¶ 43, 55, 67(A)-(B). On the third issue, the Tribunal ruled that Offshore "is entitled to receive credit for SUNAT's payments of

interest to Savia in the total amount of []4,852,454 [Peruvian soles] as of the dates Savia received such payments." *Id.* ¶ 67(C).

In the Interim Supplemental Award's decretal paragraph, the Tribunal directed Ecopetrol to "submit a recalculation of the amount due giving credit to [Offshore] for the three payments totaling []4,852,454 [Peruvian soles] that Savia received as of the dates of such receipt." *Id.* ¶ 67(D). If Offshore disagreed with Ecopetrol's calculation, it could "submit its own calculation by January 21, 2022. The Tribunal will thereafter close the hearings and issue a Final Supplemental Award resolving the Ambiguities in accordance with the remand and the Stipulation." *Id.*; *see also id.* ¶ 67(F) ("The Tribunal reserves jurisdiction for further submissions from the parties as outlined in paragraph [67(D)].").

On January 14, 2022, Ecopetrol timely submitted its brief on recalculation. ECF No. 22-25 (the "Recalculation Brief" or "Recalc. Br."). In addition to discussing recalculation, Ecopetrol "further respectfully submit[ted] that to fully implement the Tribunal's decision in the Interim Supplemental Award and avoid future disputes, it would be useful to address certain items in the Final Supplemental Award." *Id.* at 1. One of Ecopetrol's three requests was that the Tribunal "[d]eclare that [Offshore] is liable to [Ecopetrol] for any and all amounts Savia paid or is required to pay SUNAT for 2001-2007 VAT, plus interest at the rate of 9% from the date of payment by Savia to the date of reimbursement by [Offshore]." *Id.* at 2. According to Ecopetrol, "[t]he requested declaration follow[ed] from the Tribunal's Interim Supplemental Award," and would "give[] effect to the President's observation that the Tribunal intends to resolve all issues to obviate any need for further remands. The Tribunal will recall that the risk of disgorgement of the 2001 and 2004-2005 VAT refunds if SUNAT were to prevail in the ongoing *amparo* litigation in Peru,

however low, still looms." *Id.*[4]  Ecopetrol did not request further briefing on this or any other

issue, stating instead that "[t]he relief requested by [Ecopetrol] is fully laid out in

[Ecopetrol]'s pleadings."  *Id.*  Describing this declaration and the other "additional items" as

"pragmatic and implementational in nature (and not a surprise to [Offshore])," Ecopetrol

"request[ed] that the Tribunal include them in its Final Supplemental Award."  *Id.*

On January 21, 2022, Offshore submitted a brief in response.  ECF No. 22-26 (the

"Recalculation Opposition" or "Recalc. Opp.").  Although Offshore had "no issue with [the]

recalculation," it "object[ed] to the additional findings and declaratory relief" that Ecopetrol

sought from the Tribunal.  *Id.* at 2.  Regarding the issue of reimbursement of Savia's potential

tax obligations to SUNAT for 2001, 2004, and 2005 (the "Savia Issue"), Offshore contended:

> [Ecopetrol] no longer owns Savia and [Ecopetrol] would not
> suffer any loss if Savia were ordered to disgorge
> reimbursements issued by SUNAT.  Based on [Offshore's]
> reading of the redacted SPA between [Ecopetrol] and Z Mining
> Investments, LLC, which was provided to [Offshore] by
> [Ecopetrol], [Offshore] understands that [Ecopetrol] would
> suffer no damages in the event Savia was ordered to disgorge
> reimbursements funds because Z Mining Investments LLC has
> no recourse against [Ecopetrol] for such disgorgements.
> Accordingly, [Offshore] requests that any declaration
> concerning [Offshore's] liability with respect to VAT for 2001-
> 2007, be limited to only those years specifically identified by
> [Ecopetrol] as subject to ongoing *amparo* litigation – VAT for
> 2001, 2004, and 2005 – and based upon a finding that
> [Ecopetrol] is actually damaged by any payment or
> disgorgement ordered against Savia.

---

[4] An *amparo* is "a Latin American extraordinary judicial remedy specifically conceived for
the protection of constitutional rights against harms or threats inflicted by authorities or
individuals."  Lydia Brashear Tiede & Aldo Fernando Ponce, *Ruling Against the Executive in*
Amparo *Cases: Evidence from the Peruvian Constitutional Tribunal*, 3 J. Pol. Latin Am. 107,
108 (2011) (citation omitted).  "[A]mparos in Peru also closely resemble an American
injunction that allows individuals to file claims against government officials and private
entities for violations of constitutional rights."  *Id.* at 109.

*Id.* at 2-3.  The parties made no further submissions to the Tribunal.  Am. Pet. ¶ 17.  On

February 10, 2022, the Tribunal declared the hearing closed.  *Id.*

On March 16, 2022, the Tribunal issued the Final Supplemental Award, which

incorporated by reference the Interim Supplemental Award.  *Id.* ¶ 18; FSA ¶ 28.  With respect

to the Savia Issue, the Tribunal stated:

> [Offshore] contends that there is no need for a declaration that
> [Offshore] is liable to reimburse [Ecopetrol] for any and all
> amounts Savia may be required to disgorge to SUNAT for
> 2001-2007 VAT.  First, the ongoing litigation with SUNAT
> only relates to tax years 2001, 2004 and 2005.  Second,
> [Offshore] states that [Ecopetrol] no longer owns Savia having
> sold the business to Z Mining Investments, LLC ("Z Mining"),
> and [Offshore] understands that [Ecopetrol] can suffer no loss
> because Z Mining has no recourse against [Ecopetrol] for any
> disgorgements related to the tax years still being litigated.
> [Recalc. Opp. at] 2-3.  [Ecopetrol] has not denied these
> statements.

FSA ¶ 37.  The Tribunal added:

> Only tax years 2001, 2004 and 2005 are in continuing litigation
> between Savia and SUNAT.  Thus, Savia is exposed only to
> possible disgorgement of amounts that SUNAT might be able to
> claw back for those particular tax years.  [Offshore] claims that,
> in any event, [Ecopetrol] has no exposure due to the sale of the
> company to Z Mining and Z Mining's inability under its
> purchase contract to recover from [Ecopetrol] any payments that
> Savia might make to SUNAT[.]  Under these circumstances, it
> is appropriate to issue a declaration that [Offshore] must only
> reimburse [Ecopetrol] for any additional VAT taxes due for tax
> years 2001, 2004 and 2005 (over and above the amount due as
> of January 31, 2022 as set forth in Exhibit C-072a) *provided*
> that Savia is compelled to disgorge funds for those tax years to
> SUNAT, and *provided further*, that [Ecopetrol] is compelled by
> its sales contract to reimburse Z Mining for any such payment.
> Assuming that such reimbursement is made, interest will not
> accrue on any such reimbursement.

*Id.* ¶ 42; *see also id.* ¶ 45(C) (decretal language).

**IV.    The Amended Petition**

Ecopetrol filed the Amended Petition on June 14, 2022.  Am. Pet.  It requested that the

Final Supplemental Award's discussion of the Savia Issue be vacated, and that the Interim

Supplemental Award and the rest of the Final Supplemental Award be confirmed in full.  *Id.*

at 8 (citing FSA ¶¶ 37-38, 42, 45(C)).  As discussed in greater detail below, Ecopetrol's sole

basis for requesting vacatur was that "the Tribunal exceeded its powers by issuing a decision

on an issue not presented to it and beyond the scope of its authority."  *Id.* ¶ 3.

Offshore filed its opposition brief on August 26, 2022, requesting confirmation in full

of the Interim Supplemental Award and the Final Supplemental Award.  Opp.  On October 6,

2022 (following the case's reassignment to the undersigned), Ecopetrol filed its reply brief.

ECF No. 34; Reply.  The parties were unable to resolve the dispute through mediation, thus

requiring the Court's decision here.  ECF No. 53.[5]

**LEGAL STANDARD**

In accordance with "the foundational FAA principle that arbitration is a matter of

consent," *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010), "an

arbitrator derives his or her powers from the parties' agreement to forgo the legal process and

submit their disputes to private dispute resolution," *id.* at 682; *accord Trade & Transp., Inc. v.*

*Nat. Petrol. Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991) ("[T]he submission by the

parties determines the scope of the arbitrators' authority.  Thus, if the parties agree that the

panel is to make a final decision as to part of the dispute, the arbitrators have the authority and

---

[5] The parties state that they "would welcome the opportunity to present oral argument."  ECF
No. 52.  The Court declines to hold oral argument because the parties' briefing was sufficient
and oral argument would not materially assist the Court.  *See Dotson v. Griesa*, 398 F.3d 156,
159 (2d Cir. 2005) ("[A] district court acts well within its discretion in deciding dispositive
motions on the parties' written submissions without oral argument.").

responsibility to do so." (citations omitted)).  Hence, under the FAA, a court may vacate an arbitral award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).

"A party seeking relief under that provision bears a heavy burden," *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013), and the Second Circuit has "consistently accorded the narrowest of readings to the FAA's authorization to vacate awards pursuant to § 10(a)(4)," *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 161 (2d Cir. 2021) (brackets omitted) (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d Cir. 2002) (Sotomayor, J.)).  The requisite analysis is "extremely deferential," *Jock v. Sterling Jewelers Inc.*, 942 F.3d 617, 622 (2d Cir. 2019), and "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue," *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 382 (2d Cir. 2023) (quoting *Westerbeke*, 304 F.3d at 220).  "In other words, 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' a court's conviction that the arbitrator has 'committed serious error' in resolving the disputed issue 'does not suffice to overturn his decision.'"  *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

## DISCUSSION

Ecopetrol argues that "the Tribunal made a ruling on the [Savia Claim] in the Final Supplemental Award that it simply did not have the power to make.  By doing so, the Tribunal exceeded its power."  Br. at 16.  The Court disagrees.  The terms of the Stipulation and the

parties' arguments on remand provided independently sufficient bases for the Tribunal's ruling on the Savia Claim. *See Glob. Int'l Reinsurance Co. v. TIG Ins. Co.*, No. 08-cv-07338 (JSR), 2009 WL 161086, at *6 n.4 (S.D.N.Y. Jan. 21, 2009) (rejecting the contention that an arbitrator is "restrict[ed] . . . to deciding specific issues as framed in a party's motion" as "contrary to more recent caselaw that emphasizes that an arbitrator's authority to decide an issue is determined by *either* the parties' submissions or the arbitration agreement"); *Adult Use Holdings Inc. v. FaZe Clan Inc.*, 631 F. Supp. 3d 174, 183 (S.D.N.Y. 2022) (same).

## I.   The Stipulation

Ecopetrol does not contest that the Savia Issue falls within the 2008 SPA's arbitration clause: it is a "dispute, controversy or Action arising out of or relating to the [2008 SPA], or the breach thereof."  2008 SPA § 10.7(a); *see, e.g.*, *Zavala Artiega v. Griffin Organics, Inc.*, No. 16-cv-06613 (LMS), 2018 WL 11561491, at *6 (S.D.N.Y. Dec. 10, 2018) ("[T]he question of whether 'putative contract violations' occurred falls within the scope of 'any conflicts arising from this legally binding terms sheet,' and therefore, falls within the scope of [the arbitrator's] authority under the broad arbitration provision.").  Ecopetrol argues, however, that the relevant question is not whether the Savia Issue falls within the scope of the 2008 SPA's arbitration clause, but rather whether it falls within the scope of the Stipulation. *See* Br. at 16; Reply at 5-6.  On this point, the Court agrees with Ecopetrol, although the Court (unlike Ecopetrol) concludes that the Stipulation encompasses the Savia Issue.[6]

---

[6] An issue not squarely addressed by the parties is to what extent a district court should defer to an arbitrator's determination of the scope of a remand.  Stated differently, the question is whether the "extremely deferential standard of review" normally applied under Section 10(a)(4), *Jock*, 942 F.3d at 622, also applies when determining whether an arbitrator properly "limited [its] review to the specific matter remanded for clarification," *La Reunion Francaise v. Martin*, No. 93-cv-07165 (MBM), 1995 WL 338291, at *2 (S.D.N.Y. May 31, 1995) (citation omitted), *aff'd*, 101 F.3d 682, 1996 WL 197089 (2d Cir. 1996) (unpublished table decision).  The Court assumes without deciding that its review of the Tribunal's adherence to

As courts in this District have long recognized, "[w]hen an award is remanded for clarification, the arbitrator is limited in his review to the specific matter remanded for clarification and may not rehear or redetermine those matters not in question." *La Reunion Francaise v. Martin*, No. 93-cv-07165 (MBM), 1995 WL 338291, at *2 (S.D.N.Y. May 31, 1995) (quotation marks and citation omitted), *aff'd*, 101 F.3d 682, 1996 WL 197089 (2d Cir. 1996) (unpublished table decision); *accord Three Bros. Trading, LLC v. Generex Biotechnology Corp.*, No. 18-cv-11585 (KPF), 2019 WL 3456631, at *5 n.2 (S.D.N.Y. July 31, 2019); *Local 2110, Technical, Official & Professional Union v. Tchrs. Coll., Colum. Univ.*, No. 17-cv-03095 (WHP), 2019 WL 689676, at *4 (S.D.N.Y. Feb. 19, 2019); *LLT Int'l, Inc. v. MCI Telecomms. Corp.*, 69 F. Supp. 2d 510, 515 (S.D.N.Y. 1999); *Paperhandlers Union No. 1 v. U.S. Trucking Corp.*, 441 F. Supp. 469, 474 (S.D.N.Y. 1977).  This principle conforms with two more general tenets discussed above: first, "arbitration is a matter of consent," *Stolt-Nielsen*, 559 U.S. at 684; and second, "once arbitrators have fully exercised their authority to adjudicate the issues submitted to them, their authority over those questions is ended, and the arbitrators have no further authority, absent agreement by the parties, to redetermine those issues," *Gen. Re Life Corp.*, 909 F.3d at 548 (citation omitted).

According to Ecopetrol, the Stipulation "precisely specifies the only issues – the four Ambiguities – remanded to the Tribunal": (1) "whether [Ecopetrol] is entitled to reimbursement of approximately $5.8 million from [Offshore] for 2007 VAT paid by [Savia] to [SUNAT] in August and September 2013"; (2) "whether [Offshore's] June 30, 2015 conditional offer to pay from escrow halted the accrual of interest"; (3) "whether the date of

---

the scope of the remand is *de novo*, which is the standard of review that Ecopetrol (as the only party challenging the Tribunal's decision on remand) presumably would prefer here.  *Cf. Callahan v. County of Suffolk*, 96 F.4th 362, 367 (2d Cir. 2024) ("We review *de novo* whether the District Court has complied with our mandate." (citation omitted)).

[Ecopetrol's] receipt of funds from SUNAT's VAT reimbursements (i.e. the date those funds were deposited) is the correct date for stopping the calculation of interest awarded by the Tribunal, as opposed to the date Savia received the checks"; and (4) "whether [Offshore] double-counts reimbursements from SUNAT for a 2005 VAT payment."  Br. at 16-17 (quoting ECF No. 22-11 (the "Remand Opening Brief" or "ROB") ¶¶ 7-10).  Tellingly, in identifying the four issues that the Stipulation "precisely specifies," *id.* at 16, Ecopetrol cites but does not quote the Stipulation itself.  Instead, Ecopetrol quotes its brief submitted to the Tribunal on remand.  *See id.* at 16-17; *cf.* Opp. at 10.  It is true that the four issues identified in the Remand Opening Brief generally correspond with the four arguments that each party asserts in the Stipulation.  *Cf.* Stip. at 2-3.  Significantly, however, the Stipulation (unlike the Remand Opening Brief) expressly provides that these arguments are set forth "without limiting the arguments regarding the Ambiguities that may be raised on remand."  *Id.* at 3.  Ecopetrol's attempt to characterize these four issues as "the only issues . . . remanded to the Tribunal" is therefore inconsistent with the text of the Stipulation.  Br. at 16.

The Stipulation's plain language confirms that the Tribunal acted within its authority on remand by ruling on the Savia Issue.  As explained above, the Stipulation defines the "Disputed VAT Amount" as "whether the Awards require [Offshore] to make additional payments in respect of VAT taxes and, if additional payments are due, the amount of principal and interest still owed," and it defines the "Ambiguities" as "concerning whether any portion of the Disputed VAT Amount is due and, if so, the calculation and determination of the amount that is owed under the prior Awards of the Tribunal."  Stip. at 1-2.  Under these definitions, the Savia Issue – whether the 2008 SPA obligates Offshore to make additional payments to Ecopetrol if SUNAT requires Savia to pay additional VAT for 2001, 2004, and 2005 – qualifies as an "Ambiguit[y]."  *Id.*  In turn, the Stipulation remanded "[t]he [Savia

16

Issue] and any related issue that would aid in the clarification of the [Savia Issue] . . . for determination by the Tribunal," whereupon the Tribunal would "issue a supplemental award clarifying the Awards as to . . . whether any portion of the Disputed VAT Amount [wa]s due" and, if so, in what amount. *Id.* at 4. The portion of the Final Supplemental Award challenged by Ecopetrol – providing that "in the event that the Peruvian tax contests relating to tax years 2001, 2004[,] and 2005 result in the disgorgement back to SUNAT of VAT taxes previously refunded by SUNAT to Savia," Offshore must "reimburse [Ecopetrol] for the VAT taxes disgorged" under certain circumstances – plainly falls within these parameters. FSA ¶ 45(C).

Thus, based on the Stipulation alone, there is no basis for the Court to vacate the challenged portion of the Final Supplemental Award under Section 10(a)(4) of the FAA as beyond the Tribunal's powers.

## II. The Parties' Submissions

In the alternative, the Court holds that the Tribunal "had the power, based on the parties' submissions," to decide the Savia Issue. *Smarter Tools*, 57 F.4th at 382 (citation omitted).

The Court agrees with Offshore that Ecopetrol's filings on remand indicate that Ecopetrol "clearly understood" that "the scope of the Tribunal's authority during the remand arbitration included consideration of any additional amounts that Offshore currently did or might have to pay for 2001-2007 VAT," an issue that necessarily encompassed potential VAT payments for 2001, 2004, and 2005. Opp. at 11 (further capitalization omitted). For example, in its Remand Opening Brief, Ecopetrol requested that the Tribunal "require [Offshore] immediately to fulfill its absolute, unconditional obligation to indemnify [Ecopetrol] for the 2001 though 2007 VAT liabilities." ROB ¶ 11; *see also, e.g.*, *id.* ¶ 132 ("[Offshore] should once and for all be required to fulfill its absolute, unconditional obligation to indemnify

[Ecopetrol] for the VAT incurred for the 2001 though 2007 tax years."); *id.* ¶ 133(a) (requesting a declaration that "[Offshore] is liable to [Ecopetrol] and awarding the total amount of: (1) $17,400,092 U.S. Dollars for the outstanding capital for VAT that [Ecopetrol] is due to date for tax years 2001-2007, plus (2) interest of $4,290 U.S. Dollars per day until the day of payment"). The Remand Opening Brief also repeatedly discussed the parties' disputes over VAT payments for 2001, 2004, and/or 2005. *See, e.g.*, *id.* ¶¶ 10, 18-22, 25-26, 119. Thus, even if the Remand Opening Brief did not overtly advance an argument regarding the Savia Issue, the Remand Opening Brief certainly put the Savia Issue in play.

More significantly (and, in the Court's view, decisively), in the Recalculation Brief, Ecopetrol outright requested that the Tribunal address the Savia Issue in the Final Supplemental Award. Ecopetrol asked the Tribunal to "[d]eclare that [Offshore] is liable to [Ecopetrol] for any and all amounts Savia paid or is required to pay SUNAT for 2001-2007 VAT, plus interest at the rate of 9% from the date of payment by Savia to the date of reimbursement by [Offshore]." Recalc. Br. at 2. On Ecopetrol's own account, this "requested declaration follow[ed] from the Tribunal's Interim Supplemental Award" and would "not [be] a surprise to [Offshore]." *Id.* Notably, in making this request, Ecopetrol explicitly invoked the Savia Issue – that is, "the risk of disgorgement of the 2001 and 2004-2005 VAT refunds if SUNAT were to prevail in the ongoing *amparo* litigation in Peru." *Id.* Thus, even if the Stipulation and the earlier briefing did not present the Savia Issue for the Tribunal's consideration, the Recalculation Brief submitted by Ecopetrol most certainly did. Ecopetrol cannot now contend that the Tribunal "exceeded its powers by issuing a decision on an issue not presented to it" when Ecopetrol itself asked the Tribunal to decide the Savia Issue. Br. at 22; *see, e.g.*, *Hutchinson v. Farm Fam. Cas. Ins. Co.*, 500 F. Supp. 2d 87, 92 (D. Conn. 2007) (rejecting defendant's argument that "the arbitrators exceeded their authority when they

concluded, that pursuant to the law of Maine, the offset/reduction clause of [the] insurance policy was void" because defendant raised the issue in its briefing before the arbitrators); *see also Kelso Enters. Ltd. v. A.P. Moller-Maersk*, 375 F. App'x 48, 51 (2d Cir. 2010) (summary order) ("A party may not secure a reversal . . . by reliance upon an [alleged] error for which it was responsible." (citation omitted)).

Resisting this conclusion, Ecopetrol asserts that the Tribunal improperly "made a ruling in the Final Supplemental Award based on Offshore's representation of the content and effect of the 2021 SPA," even though "the 2021 SPA was not part of the record" and "[t]he effect of the 2021 SPA on the [Savia Claim] was not an issue submitted for decision and briefed before the Tribunal."  Br. at 3.  Ecopetrol also complains that it "was never given the opportunity to be heard on Offshore's representations about the content of the 2021 SPA," because the Recalculation Opposition was the last filing made by any party prior to the issuance of the Final Supplemental Award.  *Id.* at 10; *see also, e.g.*, *id.* at 20-21 ("Ecopetrol never had the opportunity to be heard on the meaning and effect of the 2021 SPA.  Instead, the Tribunal's ruling on the [Savia Claim] was based on Offshore's representation of the content of the 2021 SPA.  The effect of the 2021 SPA on the [Savia Claim] was not briefed before the Tribunal." (footnote omitted)).

This argument is unavailing.  Contrary to Ecopetrol's characterization, the Tribunal did not opine on the meaning of the 2021 SPA in the Final Supplemental Award.  Instead, the Tribunal interpreted the 2008 SPA by advising that, if the 2021 SPA stated what Offshore claimed it did, Offshore would be relieved of its duty under the 2008 SPA to indemnify Ecopetrol for VAT taxes imposed on Savia.  In the Final Supplemental Award, the Tribunal declared that Offshore had a duty under the 2008 SPA to indemnify Ecopetrol for the 2001, 2004, and 2005 VAT "*provided* that Savia is compelled to disgorge such refunds for any or all

of those tax years to SUNAT, and *provided further*, that [Ecopetrol] is compelled by [the 2021

SPA] to reimburse [Z Mining] for any such payments." FSA ¶ 45(C); *see also id.* ¶ 42

(similar).  In using the "provided that" language, the Tribunal clearly indicated that its

imposition of liability on Offshore for the VAT taxes at issue depended on what the 2021 SPA

stated (something that the Tribunal could not determine for itself, given that it lacked access

to a copy of the 2021 SPA).  Stated differently, in the Final Supplemental Award, the Tribunal

clarified that two events – SUNAT disgorging Savia and Z Mining seeking reimbursement

from Ecopetrol for said disgorgement – were conditions precedent to Offshore having a duty

under the 2008 SPA to indemnify Ecopetrol for the 2001, 2004, and 2005 VAT.  *See Georges*

*v. United Nations*, 834 F.3d 88, 94 (2d Cir. 2016) ("To manifest their intent to create a

condition precedent, parties often use language such as . . . 'provided that.'" (brackets, further

quotation marks, and citation omitted)); *Israel v. Chabra*, 537 F.3d 86, 93 (2d Cir. 2008)

("[T]he word 'provided,' placed immediately before a . . . requirement, 'indicates the creation

of a condition.'" (quoting *Nat'l Fuel Gas Distrib. Corp. v. Hartford Fire Ins. Co.*, 814

N.Y.S.2d 436, 437 (4th Dep't 2006))).  In doing so, the Tribunal limited its interpretation to

the meaning of the 2008 SPA (which was properly before it), while expressing no firm view

on the requirements of the 2021 SPA (which, of course, was not before it).[7]

---

[7] The Court is unmoved by Ecopetrol's lament about the lack of an opportunity to respond to
the Recalculation Opposition's argument about the Savia Claim.  In the Recalculation Brief,
Ecopetrol did not request additional briefing regarding the Savia Claim; on the contrary, it
described its requested declaration as "fully laid out in [its previous] pleadings."  Recalc. Br.
at 2.  There is no indication that Ecopetrol sought to file a reply brief.  To the extent that
Ecopetrol was not permitted to do so under the governing arbitral rules, Ecopetrol is reminded
that these were the arbitral rules to which it agreed.  *See Stolt-Nielsen*, 559 U.S. at 683 (parties
"may agree on rules under which any arbitration will proceed"); *Santana Prods., Inc. v.
Sylvester & Assocs., Ltd.*, 279 F. App'x 42, 45 n.1 (2d Cir. 2008) (summary order) (rejecting
argument about a party's "inability to file a reply brief under the applicable [procedural]
rules" because the party "affirmatively waived that challenge when it stipulated to a briefing
schedule that did not permit it to file a reply brief").

In arguing otherwise, Ecopetrol principally invokes two other decisions in this District. *See* Br. at 18-20 (discussing *Subway Int'l, B.V. v. Subway Russ. Franchising Co.*, No. 21-cv-07362 (JSR), 2021 WL 5830651 (S.D.N.Y. Dec. 8, 2021); and *In re Arb. Between Melun Indus., Inc. & Strange*, 898 F. Supp. 990 (S.D.N.Y. 1990)). Yet instead of explaining how either case is relevant, Ecopetrol simply quotes the two cases at length, foregoing any substantive discussion of how either case is meaningfully on point. *See id.* The Court need not address such underdeveloped arguments. *See Indem. Ins. Co. of N. Am. v. Unitrans Int'l Corp.*, 98 F.4th 73, 81 n.7 (2d Cir. 2024) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed forfeited." (original brackets and citation omitted)). Even upon examining both decisions for itself, the Court concludes that neither *Subway* nor *Melun* is on point. True, in each case the court vacated an arbitral award under Section 10(a)(4) of the FAA (or its predecessor, Section 10(d)). *See Subway*, 2021 WL 5830651, at *1; *Melun*, 898 F. Supp. at 992, 995. But the similarities with this case end there (and not just because neither *Subway* nor *Melun* involved a court's review of an arbitrator's decision on remand). Most significantly, neither case involved the situation here, where a party to the arbitration insisted that the arbitrator address an issue, only to complain that arbitrator did not have the power to render the decision when the arbitrator delivered a decision that the party did not like.

In sum, the Court holds that the Tribunal "had the power, based on the parties' submissions," to decide the Savia Issue. *Smarter Tools*, 57 F.4th at 382 (citation omitted). The Court thus rejects Ecopetrol's request for vacatur under Section 10(a)(4).

## CONCLUSION

For the foregoing reasons, Ecopetrol's motion to vacate in part the Final Supplemental Award is DENIED. Because Section 9 of the FAA requires that an arbitral award be

confirmed unless it is vacated, modified, or corrected, *see Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008), the Interim Supplemental Award and the Final Supplemental Award are CONFIRMED.  The Clerk of Court is respectfully directed to enter judgment and CLOSE the case.

Dated:  May 23, 2024
      New York, New York

                                         SO ORDERED.

                                         JENNIFER L. ROCHON
                                         United States District Judge